Merrimack
No. 6892

ROGER G. TALBOT & *a.*

v.

CONCORD UNION SCHOOL DISTRICT

July 30, 1974

*Orr & Reno* and *William L. Chapman (Mr. Robert H. Reno* orally) for the plaintiff.

*Upton, Sanders & Smith (Mr. Frederic K. Upton* orally) for the defendant.

KENISON, C.J. The principal question raised by these proceedings is whether the defendant is required under the Right to Know Law (RSA ch. 91-A (Supp. 1973)) to open to the public, including the press, its collective bargaining sessions with the Concord Education Association concerning teacher salary scales, fringe benefits and other related matters. The plaintiffs brought a petition for an injunction pursuant to RSA 91-A:7 (Supp. 1973) to enjoin the defendant from excluding them from such collective bargaining sessions. After an evidentiary hearing, the Trial Court (*Keller,* C.J.) denied the plaintiffs' request for a temporary injunction on the grounds that such a remedy would disrupt negotiations and delay the adoption of the school budget. The parties subsequently agreed that the hearing for the temporary injunction should be treated as if it had been a hearing for a permanent injunction. The trial court reserved and transferred the plaintiffs' exception to its denial of the petition.

The basic facts of this case are not in dispute. The defendant school district is a corporation organized by special act of the legislature and is empowered by law to conduct the public schools within the geographic boundaries of the district, which includes a major portion of the city of Concord. Laws 1961, ch. 355, *as amended,* Laws 1967, ch. 560 and Laws 1971, ch. 262. All powers of the district are vested in a board of education composed of nine members. The Concord Education Association is a local teachers organization which is recognized by the board as the bargaining representative of the teachers in the district. The parties entered into a "negotiations contract" which establishes in pertinent part procedures governing negotiations between the parties concerning "salaries and other matters". It provides that the parties shall meet on the written request of either of them at a mutually convenient time to exchange "facts, opinions, proposals and counter-proposals . . . freely and in good faith during the meeting or meetings (and between meetings, if advisable) in an effort to reach mutual understanding and agreement." In practice, the negotiations between the parties

are conducted in an informal manner by committees appointed by each of them. These committees have no authority to bind the parties to the terms of any collective bargaining agreement, but must return to their principals for approval of their recommendations. Although the bargaining sessions between the committees have been traditionally closed to the public, the recommendations of the committees are received and voted upon by the board in an open meeting.

The present action arose from the board's refusal to permit the plaintiff Roger G. Talbot, a reporter for the *Concord Monitor*, to attend one or more of the bargaining committees' sessions. The parties have agreed that none of the exceptions to the Right to Know Law (RSA 91-A:3 (Supp. 1973)) are applicable to these facts, and the narrow issue presented by this case is whether the bargaining sessions of the committees are within the purview of the act.

The parties have drawn this court's attention to two legislative policies which bear on this issue. The first policy is that of the Right to Know Law which is to protect the democratic process by making public the decisions and considerations on which government action is based. *Carter v. Nashua*, 113 N.H. 407, 416, 308 A.2d 847, 853 (1973). The second is that of the collective bargaining statute (RSA 31:3) which recognizes the right of public employees to negotiate the terms of their contractual relationship with the government by using the well-established techniques of private sector bargaining. *Timberlane Regional School Dist. v. Timberlane Regional Educ. Ass'n*, 114 N.H. 245, 248, 317 A.2d 555, 557 (1974); *Tremblay v. Berlin Police Union*, 108 N.H. 416, 237 A.2d 668 (1966). *See also* RSA ch. 98-C (Supp. 1973). The plaintiffs urge that the former policy must take precedence over the latter because the broad language used in RSA 91-A:2 (Supp. 1973) requires that all public proceedings of any school district board or subcommittee thereof must be open to the public. The defendant contends in response that the unlimited extension of the former policy would consume the latter because the collective bargaining process cannot operate effectively if exposed to the public eye.

There is nothing in the legislative history of the Right

to Know Law to indicate that the legislature specifically considered the impact of its provisions on public sector bargaining. However, it is improbable that the legislature intended the law to apply in such a fashion as to destroy the very process it was attempting to open to the public. *See* Annot., 38 A.L.R.3d 1070, § 6 (b) (1971). There is substantial authority in support of the defendant's position that the delicate mechanisms of collective bargaining would be thrown awry if viewed prematurely by the public. *Bassett v. Braddock,* 262 So. 2d 425 (Fla. 1972); R. Smith, H. Edwards, & R. Clark, Jr., Labor Relations Law in the Public Sector 569-94 (1974); Edwards, *The Emerging Duty to Bargain in the Public Sector,* 71 Mich. L. Rev. 885, 901-02 (1973); Wickham, *Let the Sun Shine In! Open-Meeting Legislation Can Be Our Key to Closed Doors in State and Local Government,* 68 Nw. U.L. Rev. 480, 491-92 (1973); *see* R. Smith, L. Merrifield, & D. Rothschild, Collective Bargaining and Labor Arbitration 36-44 (1970). In fact, a number of State labor boards have gone so far as to hold that a party's insistence on bargaining in public constituted a refusal to negotiate in good faith, reasoning that bargaining in the public arena "would tend to prolong negotiations and damage the procedure of compromise inherent in collective bargaining." *Menominee Bd. of Educ.,* MERC Lab. Op. 383, 386 (Mich. 1968); *see Mayor Samuel E. Zoll and the City of Salem,* MLRC Case No. MUP-309 (Mass. 1972); *Bethlehem Area School Directors,* Penn. Lab. Rel. Bd. Case No. PERA-C-2861-C, Gov't Employ. Rel. Rep't No. 505, E-1 (1973). *See also* Cal. Govt. Code. § 54957.6 (West 1974) (authorizing school boards to deny public access to "consultations and discussions" with public employee representatives concerning salaries and other matters); Grodin, *Public Employee Bargaining in California: The Meyers-Milac-Brown Act in the Court,* 23 Hastings L.J. 719, 752 (1972): *cf.* Minn. Stat. Ann. ch. 179, § 179.69 (1971) (permitting public access to all negotiating sessions *unless* otherwise provided by the director of mediation services).

The record is replete with evidence indicating that the presence of the public and the press at negotiating sessions would inhibit the free exchange of views and freeze negotiators into fixed positions from which they could not

recede without loss of face. Moreover, in the opinion of one witness, the opening of such sessions to the public could result in the employment of professional negotiators, thus removing the local representatives from the bargaining process. *See* Mont. Rev. Code Ann. § 75-6127 (1971) (opening *professional* negotiating sessions, but closing preliminary deliberations of school board).

We agree with the Florida Supreme Court "that meaningful collective bargaining in the circumstances here would be destroyed if full publicity were accorded at each step of the negotiations". *(Bassett v. Braddock,* 262 So. 2d 425, 426 (Fla. 1972)) and hold that the negotiation sessions between the school board and union committees are not within the ambit of the Right to Know Law. However, in so ruling, we would emphasize that these sessions serve only to produce recommendations which are submitted to the board for final approval. The board's approval must be given in an open meeting in accordance with RSA 91-A:3 (Supp. 1973), thus protecting the public's right to know what contractual terms have been agreed upon by the negotiators.

*Plaintiffs' exception overruled.*

All concurred.