THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BOARD OF EDUCATION OF DISTRICT 170 OF LEE AND OGLE COUNTIES *et al.*, Defendants-Appellants.

Second District (2nd Division)    No. 75-285

Opinion filed August 9, 1976.

E. E. Nicholas and Allen D. Schwartz, both of Robbins, Schwartz, Nicholas & Lifton, of Chicago, for appellants.

Patrick Ward, State's Attorney, of Dixon, for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

On October 24, 1974, the State's Attorney of Lee County filed a suit for declaratory judgment against the Board of Education of District 170 of Lee and Ogle Counties (Board) and its six members, asking the court to declare void and of no effect (1) a "closed executive session" of the Board held August 16, 1974, (2) a regular, open meeting held October 16, 1974, and (3) employment contracts formally ratified on October 16, on the ground of defendants' alleged violation of the so-called "Open Meetings Act" (entitled "An Act in relation to meetings, Ill. Rev. Stat. 1973, ch. 102, pars. 41-46). Defendants' answer denied any violation. The controversy was presented to the trial court upon the pleadings and stipulation of facts entered into by the parties. On April 1, 1975, the trial court entered an order declaring that the Board acted in violation of the Act in having a closed session, and that the contracts ratified by the Board on October 16, 1974, were void and of no effect. On May 13 the trial court denied the defendants' motion to vacate that order.

The stipulated facts can be summarized as follows: In late June and early July, 1974, the Board's superintendent of schools prepared and delivered to the Board, pursuant to his "customary duties," a wage and salary report covering various Board employees, including himself, who were not within the collective bargaining unit, which contained his recommendations as to salaries for such personnel for the school year 1974-75. The Board members decided not to act on his recommendation until after settlement of a collective bargaining agreement with the Dixon Teachers' Association (Association). On August 16, the Association and the Board entered into mediation under the auspices of the office of the Superintendent of Public Instruction to settle their collective bargaining dispute. During mediation, held in executive session, the Board's final offer was submitted to the "teacher team," with a request "to reply by the next regular Board meeting August 21." At the conclusion of the mediation session the Board agreed to meet in closed session on August 21, one hour prior to the regular meeting to continue their collective bargaining meeting, to discuss alternatives in the event of a negative response from the Association, and to discuss nonassociation salaries so that all salaries would be acted upon during the regular Board meeting if the Association's response was affirmative.

The Board met in closed session on August 21 (prior to its regular public

meeting) to discuss the collective bargaining matters. The Board's "consensus" was that if the Association rejected the Board's offer the Board would not discuss salaries at the open session. After a "general discussion on the salaries and suggestions" in the superintendent's report and particularly of the job performance of the superintendent and assistant superintendents, the Board "reached a tentative concensus [sic] as to personnel retention and salaries for the ensuing school year."

At the regular Board meeting immediately following that closed session, the Board was advised that the Association rejected the Board's salary offer. The Board took no action on any salaries at that meeting.

Thereafter, the Board and the Association "went into fact finding to resolve their differences" and met with the "fact finder" on September 16, 1974, when written and oral testimony was presented. The fact finder's report was filed with both parties on October 8, 1974.

On October 8, during the Board's regular meeting it "approved contracts for non-association employees who are not certified," *i.e.*, secretaries, cafeteria workers and custodians. "No action was then taken on certified staff members, including Association members, nor on the salaries" of seven other named staff employees or those of "substitute teachers and tutors."

At the Board's regular meeting on October 16 the Association advised the Board of its acceptance of the Board's salary offer. "At this meeting the Board took up the issues of salaries and approved a written contract with the * * * Association. After a discussion of the salaries of non-association certified personnel, the Board * * * passed, by an aye and nay vote, employment contracts for [the seven staff employees], and increased the pay for substitute teachers and tutors."

In holding that the Board violated section 2 of the Open Meetings Act (ch. 102, par. 42) the court found that the Board held a closed meeting "for the purpose of setting the salaries of the employees," and concluded that "recontracting with certain employees * * * is not a matter of employment as such, and the term employment does not encompass recontracting with existing employees."

Section 2 provides in pertinent part as follows:

"All meetings of * * * school districts and all other * * * boards * * * of this State * * * shall be public meetings except for (a) collective negotiating matters between public employers and their employees or representatives, * * * .

"This Section does not prevent any body covered by this Act from holding closed sessions to consider information regarding appointment, employment or dismissal of an employee or officer

or to hear testimony on a complaint lodged against an employee or officer to determine its validity, but no final action may be taken at a closed session." (Ill. Rev. Stat. 1973, ch. 102, par. 42.)

The question presented in this case is whether the Board's "general discussion" at its closed session of August 21 of the superintendent's salary report and recommendations for the upcoming school year covering employees who were not within a collective bargaining unit, and the Board's having reached thereat a "tentative" consensus as to personnel retention and salaries, were in violation of the provisions of the Act. To answer the question we must construe the legislative intent of the provision of section 2 stating that it "does not prevent * * * holding closed sessions to consider information regarding appointment, employment or dismissal of an employee or officer * * * but no final action may be taken at a closed session."

■■ In ascertaining this intent the entire statute must be considered, as well as the evil to be remedied and the object to be attained; and in doing so words may be modified or supplied to carry out the purpose of the legislature. (*People v. Bratcher*, 63 Ill. 2d 534, 543.) In *People ex rel. Oak Supply & Furniture Co. v. Department of Revenue*, 62 Ill. 2d 210, 214-15, the supreme court said:

"Legislative intent is not to be ascertained by a myopic concentration upon a single word, * * * and, as we said in *Illinois Crime Investigating Com. v. Buccieri* (1967), 36 Ill. 2d 556, 561, "'* * * it will be presumed the legislature did not intend absurdity, inconvenience or injustice.'"

See also *Chicago & Illinois Midland Ry. Co. v. Department of Revenue*, 63 Ill. 2d 474, 484.

■■ The second paragraph of section 2 of the Act (Ill. Rev. Stat. 1973, ch. 102, par. 42) permits closed sessions "to consider information regarding * * * employment * * * of an officer or employee," and adds "but no final action may be taken at a closed session." At the Board's closed session on August 21, the defendants considered the superintendent's wage and salary report of those of his staff, including substitute teachers and others, who were not represented by the collective bargaining unit, *i.e.*, Dixon Teachers' Association. During most of the summer of 1974 the defendants were faced with the problem of the negotiation of a collective bargaining agreement with the Association. On August 21 when they held their closed session they were awaiting a response from the Association on its acceptance or rejection of the "final offer" submitted by the Board after mediation was resorted to under the auspices of the Superintendent of Public Instruction. At that closed session the Board considered "information regarding * * * employment" of its nonassociation personnel. Public disclosure of such

information could well have adversely affected the collective bargaining efforts then in progress.[1] Obviously, in making any final offer the Board would have to have some idea of the burdens on its budget of the compensation of all personnel, including those not represented by a collective bargaining unit, and the information and particulars regarding it. We therefore hold that their "general discussion" of such information at that closed session, and their "tentative" consensus regarding the retention and salaries of personnel, was not repugnant to nor inconsistent with the legislative intention. The defendant did not take any final action on such "general discussion" or "tentative" consensus at the closed session. It was not until the Board's regular public meeting of October 8 when the Board approved contracts for nonassociation employees who were not certified, *i.e.*, secretaries, cafeteria workers and custodians, and not until its regular public meeting of October 16 (after being notified of the acceptance by the Association of the Board's salary offer), that a public "discussion" was held of the salaries of other nonassociation personnel that "the Board passed, by an aye or a nay vote" the employment contracts of 7 staff employees and "increased the pay of substitute teachers and tutors".

■ ■ We reject as "absurd" the construction of the word "employment" urged by the State, to mean only "initial hiring" of an employee. In Webster's Third New International Dictionary the word "employment" is defined as "[t]he act of employing someone * * * or the state of being employed * * * ." In Ballentine's Law Dictionary (3d ed. 1969) "employment" is defined as "[t]he act of employing or being employed * * * . This comprehends [for purposes of the Social Security Act] not only work actually done, but the entire employer-employee relationship for which compensation is paid * * * ." The normal import of the word "employment" comprehends renewal or continuance of employment as well as compensation. In the recent case of *Chicago & Illinois Midland Ry. Co. v. Department of Revenue*, 63 Ill. 2d 474, 481, the supreme court cited with approval the following statement in *People ex rel. Carruthers v. Cooper*, 404 Ill. 395, 400:

> " 'The function of this court is to construe the statute in accordance with the normal import of the words used * * * .' "

For the reasons stated in this opinion the judgment of the circuit court of Lee County is reversed.

Judgment reversed.

T. J. MORAN, P. J., and DIXON, J., concur.

---

[1] Indeed, as the stipulation shows, the Association rejected the Board's "final" salary offer at the regular Board meeting of August 21 (following the closed session), and both sides "went into fact finding."