**STATE ex rel. BOARD OF PUBLIC UTILITIES of the CITY OF SPRINGFIELD, Missouri, and Del Caywood, Denton Smith, Nancy Hoflund, J. David Lages, Ransom Ellis, N. L. McCartney, Russell Harthcock and William E. Hoyer, individually and as members of the Board of Public Utilities, Relators,**

v.

**The Honorable John C. CROW, Judge, 31st Judicial Circuit, Respondent.**

**No. 11119.**

Missouri Court of Appeals, Southern District.

Dec. 17, 1979.

Motion for Rehearing or Transfer Denied Jan. 16, 1980.

Application to Transfer Denied Feb. 11, 1980.

Richard D. Crites, General Counsel, Daniel T. Ramsdell, Asst. General Counsel, Springfield, for relator Board.

Robert W. Schroff, Schroff, Keeter, Glass & Newberry, P. C., Springfield, for relators individually.

Robert C. Fields, Fields & Kays, P. C., Springfield, for relator Hoyer

Lincoln J. Knauer, Jr., Farrington, Curtis, Knauer, Hart & Garrison, Springfield, for respondent.

Aaron A. Wilson, City Atty., Sam B. Mumma, Asst. City Atty., Harry L. Browne, Howard F. Sachs, Spencer, Fane, Britt & Browne, Kansas City, for City of Kansas City, amicus curiae.

HOGAN, Judge.

This is an original proceeding in prohibition. We are called on to decide whether the Open Meetings Act, §§ 610.010–610.030, RSMo 1978, V.A.M.S., requires that relators' bargaining sessions or their discussions of negotiations being held pursuant to the Public Sector Labor Law, §§ 105.500–105.-530, RSMo 1978, V.A.M.S., be conducted as open meetings. We conclude it does not.

The cause came to us thus: On April 3, 1978, the members of the Springfield Board of Public Utilities (hereinafter the board) were negotiating with several labor unions representing their employees. No agreement had been reached. The board's chairman called a joint meeting of its "administrative committee" and its "executive committee". No public notice of the meeting was given. Eight members of the board and its principal negotiator attended the meeting. The status of the negotiations and the issues remaining in dispute were discussed. Apparently, no record of the meeting was kept.

On the following day, the board met again, this time to resume a meeting which had been adjourned at an earlier date. No public notice was given that the adjourned meeting would resume on April 4, but it stands conceded that the minutes of the adjourned meeting indicated it would resume on April 4. During this meeting the board members considered the use of a proposed pricing index and other data as possible bases for determining cost of living increases proposed by its employees. The matters discussed were live issues in the board's negotiations with the unions.

At some point during the meeting of April 4, it was moved that the board go into closed session and the motion carried. A reporter employed by Springfield Newspapers questioned the propriety of closing the meeting and requested admittance; his request was denied. In closed session, the board discussed its employees' proposals with which it disagreed. The topics discussed were political activity of its employees, the data to be used in fixing wage rates, and, apparently, proposals dealing with arbitration and delegation of the board's legal authority to managerial employees. After 30 minutes in closed session, the board reopened the meeting and rejected a proposed quarterly cost of living index and a pricing index as data to be used in negotiation.

Shortly thereafter Springfield Newspapers, Inc., as plaintiff, filed a petition for injunctive relief in the Circuit Court of Greene County. The respondent granted a restraining order enjoining the relators individually and as the Springfield Board of Public Utilities from: 1) holding meetings or gathering together to discuss wages and terms of employment with regard to public employees without adequate and timely public notice of such meetings or gatherings; and 2) adjourning, recessing or closing parts of public meetings to "discuss . . . the business of the public, and especially as it pertains to wages and working conditions of public employees." This order, dated April 14, 1978, also restrains the members of the board, as individual persons, "from attending or participating in such [sic] closed sessions."

On April 20, 1978, the respondent heard evidence and the next day modified his restraining order so as to enjoin relators ". . . from holding meetings or gathering together to discuss wages and terms of employment with regard to public employees as a group without adequate and timely public notice of such meetings or gatherings." The modified order further enjoined ". . . the individual members . . . from attending or participating in closed sessions at which wages and terms of employment with regard to public employees as a group are discussed." The respondent heard further evidence on April 20; subsequently he notified counsel of his findings and by letter advised all parties that he would, unless prohibited from doing so, enter a temporary injunction which would restrain the relators in their capacity as board members from attending or participating in closed sessions in which the wages and terms of employment of its employees as a group were to be discussed. On July 28,

1978, relators filed their petition for a writ of prohibition here. A majority of the court believed that the respondent had misconstrued the Open Meetings Act; all considered that because violations of injunctive orders are punishable by attachment for contempt, Rule 92.15, V.A.M.R., respondent was about to effect a continuing state of "confrontation" between the Circuit Court of Greene County and the Springfield Board of Public Utilities. Our preliminary writ ran, perhaps too broadly. The cause has been briefed and argued to the whole court.

■ A preliminary word of limitation seems appropriate. Counsel's attention was called to the rule that our factual inquiry is limited in prohibition, and to the rule that prohibition is not available to correct errors which may be corrected on appeal. *State ex rel. W. A. Ross Const. Co. v. Skinker*, 341 Mo. 28, 32–33, 106 S.W.2d 409, 411–412[4, 5] [6] (1937); *State ex rel. Specialty Foam Products v. Keet*, 579 S.W.2d 650, 653 (Mo. App.1979). Nevertheless, our files contain an incredible number of motions, suggestions and exhibits of various species, even a partial transcript. An amicus brief has been filed. Such a superfluity of marginally relevant matter serves only to obscure the real question at issue. This is not an appeal nor a proceeding for a declaratory judgment and it is not our function to deal with issues which may be resolved in the trial court and orderly determined on appeal. We consider only those matters essential to a disposition of the cause.

■ On the merits, we reject out of hand the relators' contention that as the Springfield Board of Public Utilities, they are not a "public governmental body" within the intent of § 610.010(2), RSMo 1978.[1] By virtue of §§ 16.6 and 16.7 of the Springfield City Charter, the relators hold all the public utilities of the city in trust for the citizens of Springfield and operate those utilities for their benefit. Relators' emphasis on the distinction between "governmen-

tal" and "proprietary" activities is important in tort cases, but here it has no significance. The functions exercised by the relators, for our purposes in this cause, are governmental functions. See, e. g., *Lober v. Kansas City*, 74 S.W.2d 815, 822–823[11] (Mo.1934). The real issue before us is whether the statute opening the conduct of public business to the general public was meant to accommodate the constitutionally protected rights granted to public employees by the present Public Sector Labor Law. These two interests may be briefly contrasted, bearing in mind that we are firmly held and bound by the last controlling decision of our Supreme Court. Mo.Const. art. V, § 2; *Pitts v. Malcolm Bliss Mental Health Center*, 521 S.W.2d 501, 503[1, 2] (Mo.App. 1975).

The public interest in the public conduct of public business is declared by the Open Meetings Act, § 610.015, RSMo 1978, in the following language: (emphasis is ours)

"*Except as provided in section 610.025, and except as otherwise provided by law*, all public votes shall be recorded, any if a roll call is taken, as to attribute each 'yea' and 'nay' vote, or abstinence if not voting, to the name of the individual member of the public governmental body, and all public meetings shall be open to the public and public votes and public records shall be open to the public for inspection and duplication."

Comment on this statute by this court would be singularly inappropriate. In *Cohen v. Poelker*, 520 S.W.2d 50, 52[1] (Mo. banc 1975), our Supreme Court declared:

"The several sections of Chapter 610, considered together, speak loudly and clearly for the General Assembly that its intent in enacting the Sunshine Law, so-called was that all meetings of members of public governmental bodies (except those described in § 610.025) at which the peoples' business is considered must be open to the people and not conducted in secrecy, and also that the records of the body and the votes of its members must be open."

---

1. We are aware that the Open Meetings Act was amended by the 79th General Assembly in 1978. Laws of Mo.1978 at 994–995. This amendment is not material here, and in any event did not become effective until August 13, 1978, after our preliminary writ issued.

The court also held that the Open Meetings Act was a statute of general application, binding statewide at all levels of government, including constitutional charter cities. *Cohen v. Poelker,* supra, 520 S.W.2d at 54.

■ The statutes granting bargaining rights, of a sort, to public employees have a long and tortuous history which we need not restate. It is, however, clear that public employees' limited bargaining rights are constitutionally protected. In material part, § 105.510, RSMo 1978, V.A.M.S., provides: (our emphasis)

> "Employees . . . of any public body *shall have the right* to form and join labor organizations *and to present proposals to any public body relative to salaries and other conditions of employment through representative of their own choosing. . . .*"

The nature and extent of public employees' negotiating rights have been developed in a number of cases, e. g., *State ex rel. O'Leary v. Missouri State Board of Mediation,* 509 S.W.2d 84 (Mo. banc 1974); *State ex rel. Missey v. City of Cabool,* 441 S.W.2d 35 (Mo.1969). In *Curators of University of Missouri v. Public Service Employees Local No. 45,* 520 S.W.2d 54 (Mo. banc 1975), the Curators contended that the Public Sector Labor Law was not applicable to them because they are constitutionally vested with the power to govern the State University. Mo.Const. art. IX, § 9(a). Our Supreme Court held that application of the Public Sector Labor Law to the University did not represent an impermissible divestiture of the Curators' power to govern the University. Citing *Missey,* supra, 441 S.W.2d at 41, the court observed, 520 S.W.2d at 57. (our emphasis)

> "Sections 105.500 et seq., supra, do not purport to give to public employees the right of collective bargaining guaranteed by Section 29, Article I, of the 1945 Constitution to employees in private industry and in the sense that term is usually known with its attendant connotation of unfair labor practice for refusal by the employer to execute and adopt the agreement produced by bargaining . . . and the use of strike as a bargaining device constitutionally protected to private employees . . . but expressly denied . . . to public employees. The [public sector labor] act does not constitute a . . . bargaining away . . . of the legislative power of the public body and therefore does no violence to *City of Springfield v. Clouse,* supra [356 Mo. 1239], 206 S.W.2d [539] l.c. 543[4], 545–6[8, 9], *because the prior discretion in the legislative body to adopt, modify or reject outright the results of the discussions is untouched.* The public employer is not required to agree but is required only to 'meet, confer and discuss,' a duty already enjoined upon such employer prior to the enactment of [the Public Sector Labor Law] . . . ."

Nevertheless, the court held in terms, 520 S.W.2d at 57, that the Public Sector Labor Law represents a statutory vehicle by which public employees may assert the rights given them by U.S.Const. Amend. I and Mo.Const. art. I, § 9. The court further held that when the employees' representative submits proposals and grievances relative to salaries and other conditions of employment, the public body *must* acknowledge such proposals and grievances and *must* discuss them with the bargaining representative. *Curators,* supra, 520 S.W.2d at 57. (our emphasis)

■ The authorities cited permit several conclusions. The Open Meetings Act declares public policy; it is a statute of general application. Nevertheless the act admits of exceptions, and the rights it confers are conferred upon the general public and not upon any particular segment or representative of the general public. The Public Sector Labor Law, in light of the *Curators* decision, also appears to be a statute of general application. It grants limited but constitutionally protected rights to public employees. Public employees are guaranteed the right to express their grievances and make their proposals to their employer's representative. All open-meeting legislation involves the accommodation of differ-

ing interests, and, to reiterate, our problem is to determine how the General Assembly meant to deal with the negotiating rights of public employees when it enacted the Open Meetings Act in 1973. In determining legislative intent, it is appropriate to consider the history of a statute, the presumption that the General Assembly had knowledge of the general law, the surrounding circumstances and the purpose to be accomplished. *Person v. Scullin Steel Company*, 523 S.W.2d 801, 803[1] (Mo. banc 1975); *Wilson v. McNeal*, 575 S.W.2d 802, 810[10] (Mo.App. 1978). A further pertinent rule is that statutes which appear to conflict should be reconciled and harmonized, if possible, with a view to effecting the legislative purpose of both. *King v. Swenson*, 423 S.W.2d 699, 708[18] (Mo. banc 1968); *Flarsheim v. Twenty Five Thirty Two Broadway Corp.*, 432 S.W.2d 245, 251[4] (Mo.1968).

We have no explicit guide to the General Assembly's intent in enacting the Open Meetings Act; in enrolled form, the bill appears to have been a conference committee substitute. Laws of Mo.1973–1974 at 502–504. There is, however, nothing in the history of "Open Meetings" or "Sunshine" or "Freedom of Information" legislation which indicates the public interest is best served by public participation in public-sector collective bargaining. A recent thorough study indicates that the federal government and all fifty states have legislation providing that some segments of the government must open some or all of their meetings to public observation, but concludes that "[c]ollective bargaining negotiations cannot effectively be carried out if open to the public."[2] Professor Douglas Wickham, an advocate of open-meeting laws, now calls for acknowledgment that "... open-meeting legislation involves the reconciliation of serious value conflicts ...." and argues that courts should recognize "... the infeasibility of conducting collective bargaining negotiations in public. The give and take of com-

promise involves too much loss of face to expect the participants to bargain freely before outside observers."[3]

Illustrative decisions from other jurisdictions are, to some degree, persuasive. In *Talbot v. Concord Union School District*, 114 N.H. 532, 323 A.2d 912 (1974), a newspaper reporter sought to enjoin a school district from closing and excluding him and the public from a collective bargaining session concerning salary scales, fringe benefits and other related matters. The bargaining referred to was being conducted by committees which had no authority to bind the parties. The results of the negotiations were received and voted upon by the board in open session. At the time, the New Hampshire public sector labor law permitted negotiation but forbade strikes by public employees. *Timberlane Regional School Dist. v. Timberlane Regional Education Ass'n*, 114 N.H. 245, 317 A.2d 555, 557 (1974). New Hampshire's "Right to Know Law" then in effect, N.H. RSA 91–A:3(II) excepted discussions involving:

"(a) The dismissal, promotion, or compensation of any public employee or the disciplining of such employee, or the investigating of any charges against him, unless the employee affected requests an open meeting.

(b) The hiring of any person as a public employee. . . ."

The trial court refused injunctive relief, and on appeal, the Supreme Court of New Hampshire affirmed, stating, 323 A.2d at 913–914[2]:

"There is nothing in the legislative history of the Right to Know Law to indicate that the legislature specifically considered the impact of its provisions on public sector [collective] bargaining. However, it is improbable that the legislature intended the law to apply in such a fashion as to destroy the very process it was attempting to open to the public.

· · ·

\* \* \* \* \* \*

**2.** Statutory. Comment, Government in the Sunshine Act: A Danger of Overexposure, 14 Harv. J.Legis. 620, 623, 630 (1977).

**3.** Wickham, Tennessee's Sunshine Law: A Need for Limited Shade and Clearer Focus, 42 Tenn.L.Rev. 557, 564–565 (1975).

We agree with the Florida Supreme Court 'that meaningful collective bargaining . . . would be destroyed if full publicity were accorded at each step of the negotiations' (*Bassett v. Braddock*, 262 So.2d 425, 426 (Fla.1972)) [sic] and hold that the negotiation sessions between the school board and union committees are not within the ambit of the Right to Know Law. However, in so ruling, we would emphasize that these sessions serve only to produce recommendations which are submitted to the board for final approval. The board's approval must be given in an open meeting in accordance with RSA 91–A:3 (Supp. 1973),[4] thus protecting the public's right to know what contractual terms have been agreed upon by the negotiators."

Other decisions which support this position are *Bassett v. Braddock*, supra, 262 So.2d 425, 426–428 (Fla.1972); *People v. Board of Education of Dist. 170 of Lee & Ogle Counties*, 40 Ill.App.3d 819, 353 N.E.2d 147 (1976), and *Port Townsend Publishing Co. v. Brown*, 18 Wash.App. 80, 567 P.2d 664 (1977).[5]

 As noted, our Open Meetings Act admits of exceptions. § 610.025(4), RSMo 1978, V.A.M.S., specifically provides:

". . . meetings relating to the *hiring, firing or promotion of personnel of a public governmental body* may be a closed meeting, closed record, or closed vote." (our emphasis)

On trial, the relators vigorously argued that their negotiations with their employees came within the terms of this exception. The respondent's memorandum of July 18 indicates he construed the "hiring and firing" exception narrowly to apply only to discussions involving a particular person. While we respect the respondent's judgment, his construction of the "hiring and firing" exception is too narrow. Both *Cur-*

*ators*, supra, 520 S.W.2d at 57, and *Missey*, supra, 441 S.W.2d at 43[17], make it clear that a public employer has a duty to negotiate with its employees collectively, if the employees wish. We have the same view as the New Hampshire court: it is improbable that the General Assembly intended the Open Meetings Act to apply in such manner as to destroy the limited bargaining rights of public employees by exposing the public employees' thought-processes, and those of the employer, to the public eye and ear. Further, it must be borne in mind that the relators cannot, in any event, bind the City Council of Springfield by their negotiations. By the terms of § 16.7 of the City Charter, the relators are charged with operation of the city's utilities; they are granted the authority to hire such persons as are necessary to operate the utilities. The relators are the employer's representatives; they have the authority to negotiate, but again as *Curators*, supra, and *Missey*, supra, unmistakably hold, the legislative authority— here the Council—cannot be bound by the results of the relators' negotiations. When discussions by the negotiators are complete, the results are to be reduced to writing and presented to the Board of Public Utilities for adoption, modification or rejection" pursuant to § 105.520, RSMo 1978, V.A.M.S. Whether the public interest requires that such adoption, modification or rejection or that subsequent consideration by the City Council be made in a public meeting are questions we are not now called upon to decide. The public interest does not require that the mechanisms of public sector collective bargaining be inhibited and eventually destroyed by requiring that the negotiations, or discussion about those negotiations, be conducted in public.

Our opinion has necessarily been somewhat diffuse. To sum up, we hold that in issuing his restraining order—as amended— enjoining relators individually or collective-

---

4. N.H. RSA 91–A:3(I) (Supp.1973) then provided that all decisions made during executive session must be made available to the public at the termination of the session and that no contracts, appointments or other official actions would be made or taken in executive session.

5. There are, of course, precedents supporting a different view. See: Annot., 38 A.L.R.3d 1070 (Supp.1979) at 42–44.

ly from attending or participating in closed meetings to discuss wages or terms of employment with regard to employees as a group, respondent wholly exceeded his jurisdiction. Moreover, in enjoining relators as private persons from discussing such matters, the respondent wholly exceeded his jurisdiction. In these two respects, our preliminary rule in prohibition is made absolute. Nevertheless, as respondent observed in his memorandum, other issues remain in the case. As to those other issues, our preliminary rule is quashed, and it is ordered that respondent proceed to final adjudication of those issues without let or hindrance. In the exercise of discretion and pursuant to Rule 97.05, V.A.M.R., all costs are taxed to the relators.

FLANIGAN, C. J., and TITUS, BILLINGS and MAUS, JJ., concur.

GREENE and PREWITT, JJ., not participating because not members of the court when the cause was submitted.