Public Employee Labor Relations Board
No. 83-509

APPEAL OF TOWN OF EXETER

(New Hampshire Public Employee Labor Relations Board)

July 1, 1985

*Engel & Morse P.A.*, of Exeter (*David C. Engel* on the brief and orally), for the Town of Exeter.

*William P. Briggs*, of Concord, by brief and orally, for the Exeter Police Association.

DOUGLAS, J.   The issue presented here is whether RSA chapter 91-A mandates either (1) that collective bargaining sessions be open to the public when one of the negotiating parties insists upon such a format; or (2) that a negotiating party may not be restricted from issuing press releases regarding the status of closed collective bargaining sessions. We hold that there is no statutory mandate. While constitutional issues were raised, we do not reach them.

This case arises out of unfair labor practice charges brought by the Exeter Police Association against the Town of Exeter. In its answer, the town cross-filed, alleging unfair labor practices on the part of the police association.

On August 9, 1982, the Exeter Police Association notified the town of its desire to enter into collective bargaining. On September 27, 1982, the town received a set of ground rules proposed by the police association for the upcoming bargaining session. The proposal included rules which would close the negotiating sessions to the pub-

lic and would restrict either party from making any public statements about the negotiations until the parties had agreed upon a contract. At a meeting on October 13, 1982, the parties disagreed about these proposals. The town wanted negotiations open to the public, while the police membership wanted the sessions closed.

The police association filed an unfair labor charge under RSA 273-A:5, I(e) on February 24, 1983, alleging that the town had failed to comply with RSA 273-A:3, I, by refusing to meet with the association at reasonable times and places for the purpose of reaching a collective bargaining agreement. The town denied the charge and cross-filed an allegation under RSA 273-A:5, II(g) (Supp. 1983), stating that it was the police association which had refused to meet at reasonable times and places.

The public employee labor relations board (PELRB) held a hearing on the charges and, after dismissing the unfair labor charges of both parties, ordered the parties to schedule a session within thirty days to negotiate the ground rules for collective bargaining. The order further stated that "[n]either party may insist on open or public negotiations or statements thereon as a precondition for substantive negotiations if the other party does not consent. Absent such an agreement, negotiation sessions shall be held in private." The town's motion for rehearing on this latter ruling was denied, and the case is before us on appeal pursuant to RSA 541:6 and Supreme Court Rule 10.

The case which controls the issue of whether or not closed public sector collective bargaining sessions violate RSA chapter 91-A is *Talbot v. Concord Union School District*, 114 N.H. 532, 323 A.2d 912 (1974). In that case, this court held that negotiating sessions between the school board and union committees are not within the ambit of the Right to Know Law, RSA chapter 91-A. *Id.*

The town seeks to distinguish *Talbot* on the ground that the party seeking to open the bargaining sessions to the public in *Talbot* was a third-party newspaper reporter, and not one of the participants in the negotiations, as in the case before us now. We see no reason to reach a result contrary to *Talbot* on that basis, since this distinction does not affect the rationale underlying that decision.

In *Talbot* we expressed concern that "the delicate mechanisms of collective bargaining would be thrown awry if viewed prematurely by the public." *Id.* at 535, 323 A.2d at 913. We further stated that public sessions would likely "prolong negotiations and damage the procedure of compromise" as well as "inhibit the free exchange of views and freeze negotiators into fixed positions from which they could not recede without loss of face." *Id.* at 535–36, 323 A.2d at

913–14. These considerations remain, whether the party seeking a public hearing is a third party or one of the negotiating parties.

The town argues that collective bargaining sessions are not among the exceptions enumerated in RSA 91-A:3, II (Supp. 1983) and that it is not within the province of this court to "graft" such an exception to the statute. Although we recognized in *Talbot* that nothing in the legislative history of RSA chapter 91-A "indicate[d] that the legislature specifically considered the impact of its provisions on public sector bargaining," we were of the view that it was "improbable that the legislature intended the law to apply in such a fashion as to destroy the very process it was attempting to open to the public." *Id.* at 534–35, 323 A.2d at 913. It has been over ten years since that decision, and the legislature has not amended the Right to Know Law to affect the holding in *Talbot. See New Hampshire Retail Grocers Ass'n v. State Tax Comm'n*, 113 N.H. 511, 514, 309 A.2d 890, 892 (1973) (longstanding practical interpretation given a statute of doubtful meaning by those responsible for its implementation without any interference by the legislature is evidence that the interpretation conforms to legislative intent). Further, the legislature has since enacted a statute, RSA chapter 98-E (Supp. 1983), which specifically recognizes the importance of confidentiality in public sector collective bargaining. Laws 1979, 433:1. That statute, which guarantees State employees the right to discuss publicly matters concerning the State and State policies, exempts communications and records relating to collective bargaining proceedings. RSA 98-E:3 (Supp. 1983).

■ The town contends that even if RSA chapter 91-A does not prohibit closed bargaining sessions, it does not countenance restrictions upon public statements by a negotiating party regarding the status of those sessions. We disagree. The concerns upon which we based our holdings in *Talbot* are present whether the press is allowed to report the proceedings of a bargaining session firsthand, or secondhand through the press releases of one or both parties.

We emphasize again, as we did in *Talbot*, "that these sessions serve only to produce recommendations which are submitted to the board for final approval. The board's approval must be given in an open meeting in accordance with RSA 91-A:3 (Supp. 1973), thus protecting the public's right to know what contractual terms have been agreed upon by the negotiators." *Talbot*, 114 N.H. at 536, 323 A.2d at 914. Moreover, under RSA 273-A:3, II(b), the results of cost item negotiations must be submitted for approval to the legislative body, in this case the townspeople of Exeter.

The town finally argues that the refusal by the PELRB to open the bargaining sessions between it and the police association is a violation of the equal protection clause and the first amendment to the Federal Constitution and part I, article 22 of the New Hampshire Constitution. Neither party has raised or briefed the issue whether a municipality has standing to challenge State agency decisions on constitutional grounds. Therefore, we see no reason in this case to deviate from the general rule that a town has no standing to bring challenges against the State based upon constitutional protections of individuals. *See, e.g., Williams v. Mayor*, 289 U.S. 36, 40 (1933); *Newark v. New Jersey*, 262 U.S. 182, 196 (1923); *City of South Lake Tahoe v. California Tahoe*, 625 F.2d 231 (9th Cir. 1980); *Franciscan Hospital v. Town of Canoe Creek*, 79 Ill. App. 3d 490, 496–97, 398 N.E.2d 413, 417–18 (1979); *City of Madison v. Ayers*, 85 Wis. 2d 540, 544, 271 N.W.2d 101, 103 (1978).

*Affirmed.*

All concurred.