**INTERCO INCORPORATED, Appellant,**

v.

**MISSION INSURANCE COMPANY and Hartford Fire Insurance Company, Appellees.**

No. 86–1161.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1986.

Decided Jan. 7, 1987.

Jerry Lybarger, St. Louis, Mo., for appellant.

E. Thomas Liese, St. Louis, Mo., for Mission Ins. Co. and Linda Hahn, St. Louis, Mo., for Hartford Fire Ins. Co.

Before ROSS, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

WOLLMAN, Circuit Judge.

Interco Incorporated (Interco) appeals from a district court judgment holding that neither of its insurance carriers, Hartford Fire Insurance Company (Hartford) and Mission Insurance Company (Mission), had a duty to defend Interco in a suit arising out of its termination of an employee, 626 F.Supp. 888. We affirm the district court's holding as to Hartford but reverse as to Mission. We remand to the district court to determine the damages Interco is entitled to from Mission.

I.

As alleged in his complaint against Interco, David Egol (Egol), a vice president of College-Town, a subsidiary of Interco, was terminated by Arthur Sibley (Sibley), the president of College-Town, at a meeting called to discuss Egol's continuing "markdowns" on the price of College-Town apparel. In addition to Sibley and Egol, four other Interco employees, who were Egol's colleagues or subordinates, were in attendance. After arguing over the mark-downs, Egol rose from his chair and began to leave the room. When Sibley asked him where he was going, Egol replied, "to the men's room." Sibley told him to remain seated. When Egol got up again, Sibley warned him to sit down or be fired. Egol then left the room. Upon his return he was told in the presence of one of his colleagues that his employment was terminated. Egol thereafter filed a seven-count complaint against Sibley and Interco in federal court, asking for damages in excess of $25,000,000 resulting from his termination. Count six of Egol's complaint alleged "intentional and/or reckless" acts that caused Egol to be severely emotionally upset, physically shaken and humiliated, and damaged in his reputation.

At the time of the termination and lawsuit, Hartford carried the primary liability insurance policy for College-Town. College-Town was also insured under Interco's umbrella insurance policy with Mission. The Mission policy contained a provision that stated that if the underlying Hartford coverage was not effective, Mission had primary carrier responsibility, subject to a $10,000 deductible.

Interco tendered the Egol suit to Hartford. Hartford refused both defense and coverage of the Egol lawsuit for two reasons. First, the facts alleged in Egol's complaint did not constitute an "occurrence" as defined in the Hartford policy. Second, the policy specifically excluded coverage for an offense directly or indirectly related to employment or prospective employment.

Interco then tendered the suit to Mission. Mission also refused coverage and defense on the ground that the facts in Egol's complaint did not constitute an "occurrence" as defined in the Mission policy.

Negotiations between Interco, Sibley, and Egol resulted in settlement of the lawsuit for $105,000 in damages.[1] Thereafter, Mission notified Interco that it would defend Interco in the suit filed by Egol, but reserved its right to deny any coverage of damages that might be assessed. Interco notified Mission that the suit had been settled and demanded payment of the $105,000 settlement amount and attorney fees. When Mission refused, Interco sued both Mission and Hartford, alleging that both parties had breached their respective insurance policies by refusing to defend Interco in the Egol lawsuit.

Among its other findings, the district court found that "Egol was a high strung, emotional, highly paid person earning $700,000 per year and had developed a high reputation in the women's apparel industry."

The district court held that neither Hartford nor Mission had breached its duty to defend or indemnify Interco. With respect to Hartford, the district court held that the Egol firing was not an occurrence under the Hartford policy and that the exclusionary clause applied. With respect to Mission, the court held that the firing of Egol did not fall under the definition of occurrence in the Mission policy because the firing was not unexpected and unintended.

## II.

■ The law of the state where an insurance contract is issued controls the substantive rights of the parties. *Tickner v. Union Ins. Co.*, 425 S.W.2d 483, 485 (Mo. App.1968). Massachusetts law therefore applies to the Hartford policy with College-Town, while Missouri law applies to the Mission policy with Interco.

### 1. The Hartford Policy

The Hartford policy covering College-Town contains separate covenants: (1) the obligation to defend, and (2) the obligation to indemnify. An insurer's duty to defend under Massachusetts law is broader than the duty to indemnify. *Continental Casualty Co. v. Gilbane Building Co.*, 391 Mass. 143, 461 N.E.2d 209 (1984). The standard for determining whether an insurer owes a duty to defend is based on a comparison of the language of the policy with the allegations of the third party's complaint. If the allegations of the complaint are "reasonably susceptible" of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense. *Id.* 461 N.E.2d at 212. "The process is one of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy." *Sterilite Corp. v. Continental Casualty Co.*, 17 Mass.App. 316, 458 N.E.2d 338 (1983).

Hartford argues that the allegations of Egol's complaint are not "reasonably susceptible" of an interpretation that they state a claim covered by the policy because of exclusion (q), which provides that the Hartford insurance does not apply "to personal injury sustained by any person as a result of an offense directly or indirectly related to the employment or prospective employment of such person by the named insured." Interco argues that the words "employment or prospective employment" in exclusion (q) refer only to the time when an individual is being considered for employment. Under Interco's interpretation, the exclusion would not apply inasmuch as Egol was already employed by College-Town when he was terminated.

1. The complete terms of the settlement agreement were that Interco was to pay Egol the sum of $300,315. This figure represented $180,325 in bonus compensation previously earned, $13,661 in wages previously earned, $1,329 in business expenses, and $105,000 in damages.

Exclusions from insurance coverage are to be strictly construed. *Quincy Mutual Fire Ins. Co. v. Abernathy*, 393 Mass. 81, 469 N.E.2d 797, 799 (1984). Moreover, any ambiguities in insurance contracts are to be resolved against the insurer. *Id.* The language of exclusion (q) is clear, however. It excludes coverage for personal injuries resulting from offenses relating to employment. The term "employment" includes not only the initial hiring process, but the continuance of the employment relationship as well. *See People v. Board of Education of Dist. 170 of Lee and Ogle Counties*, 40 Ill.App.3d 819, 353 N.E.2d 147 (1976); *State ex. rel. Ford v. King County*, 47 Wash. 2d 911, 290 P.2d 465 (1955). Egol's complaint alleges injuries caused by a breach of an employment contract. These allegations are not susceptible to an interpretation of being within the coverage of the policy. We therefore affirm the district court's holding that exclusion (q) relieved Hartford of the duty to defend and to provide coverage.

### 2. The Mission Policy

The Mission policy states:

As respects occurrences covered under this policy, but not covered under the underlying insurance * * * the Company shall:

(a) *defend* in his name and behalf any suit against the insured alleging *liability insured under the provisions of this policy* seeking damages on account thereof, *even if such suit is groundless*, false or fraudulent * * *. (emphasis added)

The insuring language of the Mission policy provides:

The Company hereby agrees * * * to indemnify the insured for all sums which the insured shall be obligated to pay by reason of liability

(a) imposed upon the insured by law,

\* \* \* \* \* \*

for damages on account of:

(i) Personal injuries

caused by or arising out of each occurrence happening anywhere in the world * * *.

"Occurrence" is defined in the policy as "an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury * * *."

An insurer's duty to defend under Missouri law is broader than the duty to indemnify. *Missouri Terrazzo Co. v. Iowa National Mutual Ins. Co.*, 740 F.2d 647, 652 (8th Cir.1984). Where the third party's allegations state a claim which is "potentially or arguably" within the coverage of the policy, the insurer must defend the suit. *Id.* at 652; *Angelina Casualty Co. v. Pattonville-Bridgeton Terrace Fire Protection District*, 706 S.W.2d 483 (Mo.App. 1986).

In *Angelina Casualty Co.*, the Missouri Court of Appeals implied that reckless acts are included in the term of unexpected happenings or accidents. 706 S.W.2d at 484. As indicated above, Egol's complaint alleged reckless acts. If an injured party's petition states some ground of liability covered by a policy, the insurer has a duty under Missouri law to defend the entire suit, despite its contentions that some of the allegations of the petition state a claim beyond its coverage. *Harold S. Schwartz and Assoc. Inc. v. Continental Casualty*, 705 S.W.2d 494 (Mo.App.1985).

Under Missouri law, policy language substantially similar to the definition of "occurrence" set forth in Mission's policy has been held to exclude from coverage an insured's intentional acts. *Travelers Ins. Co. v. Cole*, 631 S.W.2d 661 (Mo.App.1982). The *Travelers* court defined intentional injury or damage as follows:

Injury or damage is intentional if the insured acts with the specific intent to cause harm or if the insured's intent to harm is inferred as a matter of law from the nature or character of the act. * * * Intent to harm is inferred if the natural and probable consequences of an act are to produce harm.

*Id.* at 664.

The court went on to hold that the act in question—the insured's discharging a gun

at a police officer in the insured's home—was one from which harm was almost certain to result, thus relieving the insurer of the duty to defend. The court analogized the act to that of an insured's swinging a machete around in his residence, which was also held to constitute an intentional act from which injury could be expected. *Id. See Hanover Ins. Co. v. Newcomer,* 585 S.W.2d 285 (Mo.App.1979).

Although we can agree with the district court that the event that formed the basis of a portion of Egol's lawsuit against Interco—Sibley's precipitous firing of Egol—was not unexpected or unintended, that is not the end of the matter. Granted that Sibley's firing Egol in the presence of one of Egol's colleagues may have been a boorish act, one hardly calculated to find favor with the professional school of feel-good management techniques, still and all it cannot be equated with the discharging of a firearm or the swinging of a machete. That Egol has the temperament of an opera singer may have made Sibley's handling of the termination all the more insensitive, but it does not follow that Sibley expected or intended that his act of terminating Egol should cause the physical and emotional damages Egol allegedly suffered as a result of that act.

■ We hold that Egol's complaint stated a claim that was potentially or arguably within the coverage of Mission's policy and that Mission should therefore have undertaken its duty to defend Interco. Accordingly, we reverse that portion of the judgment which holds that Mission was not obligated to defend or indemnify Interco and remand the case to the district court for a determination of the amount of Mission's liability to Interco flowing from Mission's breach of its duty to defend and indemnify. *See Missouri Terrazzo Co. v. Iowa Nat'l Mut. Ins. Co.,* 740 F.2d 647, 653 (8th Cir.1984). That portion of the judgment which absolves Hartford of any duty to defend or indemnify under its policy is affirmed.