**AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, Plaintiff,**

v.

**VISTA MEDICAL SUPPLY, Vista Equities Group, Allan C. Kramer and Darlene Wilson, Defendants.**

**No. C–88–0965–WWS.**

United States District Court, N.D. California.

Nov. 10, 1988.

Norman J. Roger, Owen, Melbye & Rohlff, Redwood City, Cal., for plaintiff.

George F. Camerlengo, C. Judith Johnson, Camerlengo & Johnson, Burlingame, Cal., Stephen D. Pahl, Tarkington, O'Connor & O'Neill, San Jose, Cal., for defendants.

## MEMORANDUM OF DECISION AND ORDER

SCHWARZER, District Judge.

This is a declaratory relief action. Insurer American Guarantee and Liability Insurance Company ("American") seeks a determination that it is not obligated by its insurance contract with defendants Vista Equities Group, Vista Medical Supply, and Allan C. Kramer (collectively, "Vista") to either defend Vista against or indemnify Vista for claims asserted in a state court action by defendant Darlene Wilson ("Wilson") against Vista.

American contends that the personal injury and property damage provision in Vista's general liability policy does not cover the claims for wrongful discharge, breach of covenant of good faith and fair dealing, intentional misrepresentation, negligent misrepresentation, pay inequity in violation of California Government Code section 12940(a), and wage discrimination in violation of California Labor Code section 1197.5 filed by Darlene Wilson because (1) an employer's termination of an employee's employment relationship is not an "occurrence" within the meaning of the policy and thus Wilson's wrongful termination, intentional misrepresentation, negligent misrepresentation, and sexual harassment claims

are not covered, and (2) the exclusion of contractual liability applies and thus American need not defend Vista against Wilson's claim for breach of the covenant of good faith and fair dealing in her employment contract. Vista contends that (1) intentional conduct is covered if the insured did not intend to harm the victim by his conduct; (2) the exclusion for contractual liability does not apply to Wilson's claim of breach of the covenant of good faith and fair dealing because such a claim sounds in tort as well as in contract; and (3) the insurance company is required to defend against Wilson's claim of negligent misrepresentation. Wilson joins in Vista's arguments and contends additionally that (1) her sexual discrimination claim is covered under the bodily injury section of the policy, and (2) her sexual discrimination claim and a potential defamation claim are covered under the personal injury section of the policy.

## DISCUSSION

California law controls the construction of the terms of an insurance policy. *See St. Paul Mercury Ins. Co. v. Ralee Engineering Co.*, 804 F.2d 520, 522 (9th Cir. 1986).

Under California law an insurer must defend an action which seeks damages potentially within the coverage of the policy. *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 275, 54 Cal.Rptr. 104, 112, 419 P.2d 168, 176 (1966). Doubt as to whether an insurer must defend should be resolved in the insured's favor. *Id.* at 269, 54 Cal.Rptr. at 110–11, 419 P.2d at 164–65.

## I. COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE

■ American's comprehensive general liability policy covers "bodily injury or property damage ... caused by an occurrence." Policy No. TOP 31–26–61600, form T200 at 2, attached as Exh. A to Holway Decl.[1] It defines an occurrence as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.* American has the duty to defend against "any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent." *Id.*

### A. Coverage for Intentional Conduct

■ American contends that it need not defend Vista against Wilson's claims alleging intentional conduct—wrongful discharge, intentional misrepresentation, negligent misrepresentation, and sexual harassment—because the policy issued to Vista covers accidents, not intentional acts.[2]

Vista contends that an insurance company is only relieved of liability for an intentional act if that act was done with a "preconceived design to inflict injury," and has introduced evidence, primarily the declaration of Kramer, that Vista did not intend to harm Wilson. The standard relied upon by Vista is from a line of cases construing California Insurance Code section 533, which provides that an insurer "is not liable for a loss caused by the wilful act of the insured." *See, e.g., Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 886–87, 151 Cal.Rptr. 285, 296–97, 587 P.2d 1098, 1109–10 (1978). However, this standard has not been applied beyond section 533. *See United States Fidelity & Guar. v. American Employers' Ins. Co.*, 159 Cal.

---

**1.** Vista argues that the Court cannot consider the evidence of the policy because there is no foundation for it (Federal Rule of Evidence 901) and it is hearsay (Federal Rule of Evidence 802). The hearsay objection is frivolous. Holway's declaration that a "true and correct" copy has been attached (Holway Decl. at ¶ 4, 5) is sufficient foundation.

**2.** American has produced a copy of Wilson's First Amended Complaint in the Superior Court. (Exhibit C attached to the Holway Decl.) Vista

argues that it is inadmissible because it is not based on Holway's personal knowledge (Federal Rule of Evidence 602), because it is hearsay (Federal Rule of Evidence 802), and because there is no foundation for its admission (Federal Rule of Evidence 901). The Court will take judicial notice of a closely related state action, such as this. *See St. Paul Fire & Marine Ins. Co. v. Cunningham*, 257 F.2d 731, 732 (9th Cir. 1958).

App.3d 277, 288–89, 205 Cal.Rptr. 460, 467–68 (3d Dist.1984) (applying different standards to exclusion under section 533 than to policy exclusion for non-accidental acts). A number of Court of Appeal cases have been decided since *Clemmer,* construing policy exclusions of coverage for non-accidental acts, and they focus not on the intent of the insured to cause harm, but upon the nature of the harmful act itself—whether it was an "accident." *See, e.g., Commercial Union Ins. Co. v. Superior Court,* 196 Cal.App.3d 1205, 242 Cal.Rptr. 454 (1st Dist.1987) *review denied* 2/24/88; *Royal Globe Ins. Co. v. Whitaker,* 181 Cal.App.3d 532, 226 Cal.Rptr. 435 (3d Dist. 1986). Thus, under California law an insurer may place more restrictive limits on its liability for intentional acts than that limit provided by section 533. *Cf. Fresno Economy Import Used Cars, Inc. v. United States Fidelity & Guar. Co.,* 76 Cal.App.3d 272, 280, 142 Cal.Rptr. 681, 686 (5th Dist. 1977) ("insurer is free to select the character of the risk it will assume, and it is liable only for a loss within the terms of the policy").

In construing insurance policies with the same language as the policy issued to Vista, an occurrence or "accidental event" has been defined as " 'arising from extrinsic causes[;] occurring unexpectedly or by chance[; or] happening without intent or through carelessness.' " *St. Paul Fire & Marine Ins. Co. v. Superior Court,* 161 Cal.App.3d 1199, 1202, 208 Cal.Rptr. 5, 7 (3d Dist.1984) (quoting Webster's Ninth New Collegiate Dict. 49 (1983)). "Purposeful acts" do not create potential liability under such a policy. *Id.* Thus, under California law, American is only obligated to defend Vista against claims that do not allege intentional conduct.

### 1. Wrongful Termination

■ American contends that Wilson's claim of wrongful termination alleges intentional conduct. In *St. Paul Fire & Marine Ins. v. Superior Court,* the Court of Appeal held that wrongful termination of an employee was "not an unintentional, unexpected, chance occurrence" covered under the policy, because the employer act-ed purposefully in discharging an employee and purporting to eliminate his position so that he could not be rehired. 161 Cal. App.3d at 1202, 208 Cal.Rptr. at 7. Wilson's wrongful termination claim similarly alleges a purposeful act: the termination of Wilson's employment. (First Amended Complaint at 5 ("Complaint").) Thus, American is not obligated to defend Wilson's wrongful termination claim against Vista.

### 2. Intentional Misrepresentation

■ In *Royal Globe Ins. Co. v. Whitaker,* the Court of Appeal addressed whether an insurer had a duty to defend a claim of fraud, and concluded that an insurer does not under a policy covering accidents or occurrences, because an intentional act cannot be an accident. 181 Cal. App.3d 532, 537, 226 Cal.Rptr. 435, 437–38 (3d Dist.1986) In *Whitaker,* the allegation was that the insured had promised, without intention of performing the promise, to close escrow on a stated date. 181 Cal. App.3d at 535, 538–39, 226 Cal.Rptr. at 436, 438. Similarly, American does not have a duty to defend Vista against Wilson's claim of intentional misrepresentation, because it is based upon an allegation of an intentional act: that Kramer, her employer, promised her job security, with no intent to honor his promise. (Complaint at 7–8.)

### 3. Negligent Misrepresentation

■ American contends that Wilson's claim for negligent misrepresentation does not allege an "occurrence." American relies upon *Hartford Fire Ins. Co. v. Karavan Enterprises, Inc.,* in which the district court considered whether allegations of the negligent infliction of emotional distress arising out of the discharge of an employee created a potential for liability under a policy covering occurrences. 659 F.Supp. 1075, 1076 (N.D.Cal.1986). In *Karavan,* the court held that, because the claim was based on the intentional act of discharging the employee, the allegation that the harm it caused was unintended did not create a duty to defend. *Id.* American contends that Wilson's claim of negligent misrepresentation is similarly based on the inten-

tional act of her discharge. Wilson alleges that Vista represented that she would have job security, with no reasonable grounds for believing that representation to be true. (Complaint at 9.) As in *Karavan,* Wilson's damages arise out of Vista's intentional act of discharging her. Therefore, summary judgment for American on its duty to defend Vista against this claim is appropriate.

### 4. Sexual Discrimination

#### a. *Fair Employment and Housing Act*

Wilson alleges that Vista violated the California Fair Employment and Housing Act ("FEHA") by paying her lower compensation because she is female. American contends that Wilson is alleging a disparate treatment claim, which requires proof of discriminatory motive. Such proof of motive or intent would make the actions of Wilson's employer not "accidental" and thus not an "occurrence" within the terms of the policy. Wilson contends that she is also attempting to prove disparate impact, which is not based on a showing of intent, and so would be an "occurrence" under the policy. Neither party cites California law.

■ To prove disparate treatment under the FEHA, a plaintiff must establish intentional discrimination. *See, e.g., Mixon v. Fair Employment and Hous. Comm'n,* 192 Cal.App.3d 1306, 1317–22, 237 Cal.Rptr. 884, 890–94 (6th Dist.1987).[3] Because a claim for disparate treatment requires proof of intentional acts, under California law American has no potential liability under the policy. *Cf. St. Paul Fire & Marine Ins. Co. v. Superior Court,* 161 Cal.App.3d 1199, 1202, 208 Cal.Rptr. 5, 7 (3d Dist.1984) (no potential liability for "purposeful acts" under policy covering occurrences).

The California Fair Employment and Housing Commission applies the same standards to a disparate impact claim un-

der the FEHA as are applied to disparate impact claims under Title VII. *See Department of Fair Employment and Hous. v. City and County of San Francisco,* FEHC No. 82–11, at 25, (1982).[4] A plaintiff must prove that the challenged employment policy has a "substantial disparate impact upon members of the affected class . . ., but need not prove 'intentional' discrimination against that class." *Id.* (citing *Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977); *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1970)).

Wilson contends that because she need not allege intent to discriminate on her disparate impact claim, it does not allege a purposeful act excluded from coverage under Vista's policy. She cites *Solo Cup Co. v. Federal Ins. Co.,* a Seventh circuit case applying Illinois law. 619 F.2d 1178 (1980). However, the result in *Solo Cup* does not state the result under California law. California courts have focused not on whether the claim requires proof of intent or proof of negligence (the focus of the *Solo Cup* analysis) but rather have looked at whether the alleged act giving rise to damages is purposeful. *See, e.g., Commercial Union Ins. v. Superior Court,* 196 Cal.App.3d 1205, 1209, 242 Cal.Rptr. 454 (1st Dist. 1987) (act of discharging employee is intentional and so not covered); *St. Paul Fire & Marine Ins. v. Superior Court,* 161 Cal. App.3d 1199, 1202, 208 Cal.Rptr. 5, 7 (3d Dist.1984) (same); *Hartford Fire Ins. Co. v. Karavan Enter.,* 659 F.Supp. 1075, 1076 (N.D.Cal.1986) (allegation that though act intended, harm was not, did not create potential of liability under policy). Where the act giving rise to damages was intentional, the California courts have rejected the argument that while the act was intentional, the damages were not, and thus should be covered under the policy. For example, in

---

3. The Fair Employment and Housing Commission requires a showing of intentional discrimination to prove a disparate treatment claim under the FEHA, but does not use the same analysis as that used under Title VII. *Mixon v. Fair Employment and Housing Comm'n.,* 192 Cal.App.3d 1306, 1319, 237 Cal.Rptr. 884, 892 (6th Dist.1987); *Department of Fair Employment*

*and Housing v. Church's Fried Chicken, Inc.,* FEHC No. 87–18, 11 & n. 2.

4. The California courts generally defer to the administrative interpretation of a statute adopted by the agency charged with its enforcement. *See Jones v. Tracy School Dist.,* 27 Cal.3d 99, 107, 165 Cal.Rptr. 100, 103–04, 611 P.2d 441, 444–45 (1980). This Court will do the same.

*Royal Globe Ins. Co. v. Whitaker,* the Court of Appeal stated that "[t]he same roadblock [that an intentional act is not an "accident" within the plain meaning of the term] at the definition of 'accident' halts any argument claiming the appellants' assignor intended his act but not the resulting harm." 181 Cal.App.3d 532, 537, 226 Cal.Rptr. 435, 438 (3d Dist.1986). *See also Commercial Union Ins. Co. v. Superior Court,* 196 Cal.App.3d at 1208, 242 Cal. Rptr. at 455 (trial court erred in applying term " 'accident' to the consequences of the act rather than to the happening of the act itself"). The act of setting an employment policy is intentional, and thus is not an "occurrence." Under a disparate impact theory a plaintiff does not need to prove that the employer intended to discriminate, but the possibility that the employer may not have intended the harm does not create coverage.

### b. California Equal Pay Act

■ Wilson alleges that Vista violated California Labor Code section 1197.5, which requires that employers pay men and women the same for work in the same "establishment" that is of "the same quantity and quality of the same classification of work." Under the analysis above, the decision setting pay scales cannot be considered an "occurrence" within the provision of Vista's insurance.

### B. The Contractual Exclusion

■ Wilson alleges that Vista terminated her in breach of an alleged oral employment contract with Vista. American contends that under the policy it is only liable for legal obligations of the insured "because of bodily injury or property damage," and that, in California, such language has been construed to cover only tort, and not contractual, liability. (Memo. in Support at 7–11.) This is a correct statement of California law. *See, e.g., Insurance Co. of the West v. Haralambos Bev.,* 195 Cal. App.3d 1308, 1317, 241 Cal.Rptr. 427, 430 (2d Dist.1987).

The "Optional Extended Protection" for "Contractual Liability Coverage" that Vista purchased does not change this result.

(Form T200 at 1, forming part of policy TOP 31–26–61600, attached as Exh. A to Holway decl.) Page 3 of Form T200 states that this contractual liability coverage means that "[e]xclusion (a) of the Bodily Injury and Property Damage Liability Coverage [excluding liability for all but incidental contracts] does not apply to any written contract or agreement relating to the conduct of the named insured's business," subject to certain limitations, none of which appear to be applicable. (Form T200 at 3–4.)

While an employment contract would appear to be a contract "relating to the conduct of the named insured's business," under the policy, as construed by California courts, the insurer is only obligated to defend claims which might result in tort liability. For example, in *International Surplus Lines Ins. Co. v. Devonshire Coverage Corp.,* the Court of Appeal examined a policy covering liability for personal injury and property damage which included an endorsement extending coverage to "contractual liability assumed by [the insured] under a contract designated in the schedule of this insurance." 93 Cal.App.3d 601, 608, 155 Cal.Rptr. 870, 873 (2d Dist.1979). The court held that this contractual liability endorsement must be read as limited by the policy coverage definition of an "occurrence," and thus this language included only liability for personal injury or property damage, and not contractual liability, assumed by the insured. 93 Cal.App.3d at 609, 155 Cal.Rptr. at 874. *See also Haralambos Bev.,* 195 Cal.App.3d at 1317, 241 Cal.Rptr. at 431 (contractual liability coverage endorsement in "commercial multiperil policy" containing a "standard comprehensive general liability endorsement" does not cover damages for breach of a contract to purchase hauling equipment). Thus, American is not obligated to defend Vista against Wilson's wrongful discharge claim because such a claim would impose liability under the alleged oral contract, rather than tort liability.

■ American contends that Wilson's claim of breach of the implied covenant of good faith and fair dealing is "dependent

upon the existence of a contract and any liability flowing from an alleged breach is purely contractual in nature." (Memo. in Support at 10.) Vista contends that this claim sounds in tort and thus American would be required to defend Vista on that claim. However, even if this claim sounds in tort,[5] American would still have no potential liability because, as discussed above, the intentional act of discharging an employee is not an "occurrence," (*St. Paul Fire & Marine Ins. v. Superior Court*, 161 Cal.App.3d 1199, 1202, 208 Cal.Rptr. 5, 7 (3d Dist.1984)) and a negligence claim based on an intentional act does not create a potential for liability (*Hartford Fire Ins. Co. v. Karavan Enterprises, Inc.*, 659 F.Supp. 1075, 1076 (N.D.Cal.1986).

## II. COVERAGE FOR PERSONAL INJURY AND ADVERTISING INJURY

Wilson contends that the personal injury section of Vista's insurance policy with American covers her sexual discrimination claim and her potential claim for defamation against Vista. Page one of the policy indicates that Vista has "Optional Extended Protection" for "Personal Injury Liability Coverage and Advertising Injury Liability Insurance." (Form T200, attached as Exh. A to Holway Decl.)

### A. Sexual Discrimination

 "Personal Injury" is defined in Vista's policy as injury "arising out of" one of a number of listed torts, including false arrest, wrongful entry, libel, slander, and invasion of an individual's right of privacy. (Form T200 at 4, attached as Exh. A. to Holway Decl.) This language cannot be construed to cover a claim under the Fair Employment and Housing Act, or a claim under the state equal pay act. *See Pacific Employers Ins. Co. v. American Mut. Liability Ins. Co.*, 65 Cal.2d 318, 324, 54 Cal.

Rptr. 385, 387, 419 P.2d 641, 643 (1966) (court will not give clear policy language strained construction), *overruled on other grounds, Herzog v. National American Ins. Co.*, 2 Cal.3d 192, 199, 84 Cal.Rptr. 705, 708, 465 P.2d 841, 844 (1970).

### B. Defamation Claim

Wilson contends that she has a potential claim for defamation or disparagement which would be covered under the personal injury section of the policy. The policy defines "personal injury" to include "a publication or utterance ... of a libel or slander or other defamatory or disparaging material." (Form T200 at 4, attached as Exh. A to Holway Decl.)

 In determining whether American has a duty to defend Vista, the Court must consider not only the theories for recovery alleged in the complaint against the insured, but also whether there is potential liability based on the facts known to the insurance company. *See Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 275, 54 Cal.Rptr. 104, 112–13, 419 P.2d 168, 176–77 (1966) (stating that "the duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources").

For example, in *Mullen v. Glens Falls Ins. Co.*, the complaint filed against the insured suggested that the injuries alleged had occurred as the result of the operation of a motor vehicle, which would not have been covered under the insured's comprehensive personal liability policy. 73 Cal. App.3d 163, 169, 140 Cal.Rptr. 605, 608 (5th Dist.1977). However, the insurance company had received a notice from one of its agents that the insured had been involved in a non-automobile accident; this was sufficient. *Id.* at 170, 140 Cal.Rptr. at 609. *See also Smith v. Travelers Indem. Co.*, 32

---

5. The issue of whether, and under what circumstances, if any, tort recovery is available to a wrongfully discharged employee on the theory that his employer breached the covenant of good faith and fair dealing is currently pending before the California Supreme Court. *Foley v. Interactive Data Corp.*, No. LA 32148, oral argument June 1986. *See, e.g.* Opening Brief of Petitioner Daniel D. Foley, pages 36–38 (filed Mar. 7, 1986) (arguing that the California Supreme Court should expressly recognize a claim for tortious breach of the covenant of good faith and fair dealing); Brief of Respondent Interactive Data Corporation, pages 43–58 (filed Apr. 29, 1986) (arguing that the covenant of good faith and fair dealing does not create a claim in tort for wrongful discharge).

Cal.App.3d 1010, 1017, 108 Cal.Rptr. 643, 649 (5th Dist.1973) (insurance company providing coverage for horsetrailer told by letter that accident involved the horsetrailer; this triggered duty to defend although complaint made no mention of horsetrailer).

The limit to this principle is where the potential for liability is "tenuous and far-fetched." *Giddings v. Industrial Indem. Co.*, 112 Cal.App.3d 213, 220, 169 Cal.Rptr. 278, 282 (4th Dist.1980). For example, in *Lassen Canyon Nursery v. Royal Ins. Co. of Am.*, 720 F.2d 1016, 1018 (9th Cir.1983), the Ninth Circuit held that there was no duty on the part of the insurer to defend the insured against an antitrust action under a policy insuring against "property damage" where the complaint sought only economic losses and the plaintiff's responses to interrogatories listed purely economic losses. *Id.* The court found that no facts before it warranted a conclusion that there was potential liability for the diminution in value of fixed assets, although such losses may be recovered in an antitrust action. *Id.*

Wilson has made no allegations in her complaint that can be read as stating facts giving rise to potential liability for defamation. *Compare CNA Cas. of Cal. v. Seaboard Surety Co.*, 176 Cal.App.3d 598, 607, 222 Cal.Rptr. 276, 280 (1st Dist.1986) (amended complaint containing cause of action for "antitrust" included factual allegations that the insured "misrepresented 'the business, property and rights possessed by plaintiffs to persons with whom plaintiffs did business'" which created potential liability under the policy coverage for libel, slander, or other defamatory or disparaging material). However, in a declaration she made in the underlying state court action, Wilson states that she was "repeatedly falsely accused by Dr. Kramer for being responsible for purchase of the computer and the resulting problems [and was] falsely accused of dereliction of my duties in terms of spending excessive amounts on supplies and renovations of buildings. [She] believes that Dr. Kramer repeated these falsehoods about [her] to others, including Mr. Viegas and Mr. Olson. Additionally, [she] ... was humiliated in front of the staff on a number of occasions." (Wilson Decl. at ¶ 24, attached to Johnson Decl.) American has knowledge of these facts, as it has been conducting the defense of Vista, under a reservation of rights. (Memo. in Support at 3.)

The tort of defamation involves making a "publication which is false, defamatory and unprivileged, and which has a natural tendency to injure or which causes special damage." 5 B. Witkin, *Summary of California Law*, Torts § 471 (9th ed. 1988). Wilson's allegations about false statements made about her could give rise to a claim of defamation.[6] Thus, there is a potential for liability under the policy, it is not "tenuous and farfetched," and American has a duty to defend Vista against this claim.[7]

## CONCLUSION

American's motion for summary judgment on its duty to defend Vista is granted on all claims except for the defamation claim on which judgment is granted to Vista. The parties shall bear their own costs.

IT IS SO ORDERED.

---

**6.** Pursuant to California Civil Code section 576, a judge "at any time before or after commencement of trial, in the furtherance of justice, and upon such terms as may be proper, may allow the amendment of any pleading." (West 1979)

**7.** The personal injury coverage does not extend to "personal injury ... arising out of libel or slander or the publication or utterance of defamatory or disparaging material concerning any person ... or services, ... made by or at the direction of the insured with knowledge of the falsity thereof." (Form T200 at page four, attached as Exh. A. to Holway Decl.) However, American has produced no evidence of knowledge of falsity by the insured.

Wilson contends that even if American is not required to defend Kramer because he knew his statements were false, American would still be required to defend Vista Medical Group and Vista Equities, as their liability is based on *respondeat superior*. The Court need not address this contention, because American has produced no evidence that Kramer knew that his statements were false.