[No. B042722. Second Dist., Div. Two. Apr. 26, 1990.]

LOYOLA MARYMOUNT UNIVERSITY et al., Plaintiffs and Appellants, v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY, Defendant and Respondent.

---

**COUNSEL**

Burke, Williams & Sorensen, Martin L. Burke and Harold A. Bridges for Plaintiffs and Appellants.

Hawkins, Schnabel & Lindahl and Kelley K. Beck for Defendant and Respondent.

---

**OPINION**

**FUKUTO, J.**—Plaintiffs, Loyola Marymount University and several present and former officers and trustees (hereafter collectively LMU), appeal from a judgment in favor of LMU's liability insurer, Hartford Accident and Indemnity Company (Hartford), in an action seeking declaratory relief and damages on account of Hartford's refusal to defend LMU in three lawsuits brought by two terminated employees. Because these lawsuits were not within the scope of Hartford's duty to defend under its policy, the judgment will be affirmed.

## FACTS

The lawsuits underlying the present controversy were brought by Michael Callahan, a former tenured professor at LMU, and Marvin Wood, its erstwhile baseball coach.

Callahan was dismissed by LMU after marrying another faculty member while still a Jesuit priest. In response, he brought two actions. His Los Angeles Superior Court complaint alleged causes of action for breach of employment contract, "wrongful discharge," and violation of the right to privacy of marriage, allegedly secured by article I, section 1 of the California Constitution. Callahan also sued LMU in United States District Court

in Los Angeles, alleging discrimination on the basis of religion and gender, in violation of title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.). This action sought declaratory and injunctive relief and damages, including compensation for "mental anguish and trauma."

Wood brought a single action, in Los Angeles Superior Court, alleging he was discharged as coach at LMU without good cause and only upon vague charges of "negligence." He pleaded causes of action for "wrongful discharge," breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, negligence in evaluating his employment, violation of Labor Code section 1050 (which prohibits an employer from attempting to prevent a former employee from obtaining employment "by any misrepresentation"), and conspiracy to publish false accusations of his "negligence."

Hartford refused the tendered defense of Wood's and Callahan's actions, on grounds they were not within the scope of the relevant insurance policies.[1] LMU then commenced this litigation, seeking a declaration of its entitlement to coverage and defense, as well as damages for Hartford's alleged violations of the covenant of good faith and fair dealing and Insurance Code section 790.03, subdivision (h).[2]

Both parties filed motions for summary judgment or alternatively for summary adjudication of issues. The motions were based on a stipulation of facts, encompassing the facts recited above, the contents of Hartford's policy and the complaints in the lawsuits against LMU, and an acknowledgement that LMU's damages causes of action depended upon the issue of duty to defend.

Holding that Hartford had no duty to defend, the trial court granted Hartford's summary judgment motion and entered judgment in its favor.[3]

### DISCUSSION

■ Determination of LMU's appeal involves interpretation of Hartford's policy, and that presents an issue of law calling for this court's

---

[1] Hartford issued LMU two policies, the terms of which appear in all relevant respects identical. Accordingly, reference herein will be to "the policy."

[2] LMU also asserted a fraud cause of action, based on alleged misrepresentations in the policy terms under which LMU was claiming and Hartford was denying coverage.

[3] The judgment, prepared by Hartford, is couched in traditional "plaintiff take nothing" language. As to LMU's claim for declaratory judgment, the more appropriate practice would have been to render an express, unfavorable declaration. (See, e.g., *VTN Consolidated, Inc.* v. *Northbrook Ins. Co.* (1979) 92 Cal.App.3d 888, 893-894 [155 Cal.Rptr. 172].) Absent complaint by the parties, however, there is no need to so rectify the judgment. (Cf. *Anderson* v. *Stansbury* (1952) 38 Cal.2d 707, 717 [242 P.2d 305].)

independent review. (*Royal Globe Ins. Co.* v. *Whitaker* (1986) 181 Cal.App.3d 532, 536 [226 Cal.Rptr. 435].) Several principles guide that review. ■ Foremost, Hartford's duty to defend lawsuits under the policy exceeds its duty of indemnification, and extends to actions posing the potential of liability within policy coverage. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275-277 [54 Cal.Rptr. 104, 419 P.2d 168].) That duty, however, is not unlimited, and it ultimately depends upon the facts of the lawsuit of which the insurer is aware. (*Id.* at pp. 276-277.) ■ In construing the terms of policy coverage in this context, "doubts, uncertainties and ambiguities arising out of policy language ordinarily should be resolved in favor of the insured in order to protect [its] *reasonable* expectation of coverage." (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920].) But that principle comes into application only where the policy provision is truly ambiguous, i.e., susceptible to two or more constructions, all of which are reasonable. (*Ibid.*)

LMU's contentions on appeal address three different liability coverages under the policy, together with definitional provisions and exclusions variously applicable to them.

1. *Personal Injury Coverage.*

The policy's "Personal Injury" coverage extends to injuries arising from a series of intentional as well as negligent torts. They include "the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy . . . or other invasion of an individual's right of privacy." For purposes of this coverage, the triggering "occurrence" includes any one of these "offenses."

■ LMU contends that this coverage extends to the Callahan and Wood state court actions, because both of them allege or at least potentially encompass claims of defamation and invasion of privacy. Hartford does not directly challenge the premise; instead, it contends that the actions are in any event excluded from coverage and defense by exclusion (q) of the policy, which states: "This insurance does not apply . . . [¶] (q) to personal injury sustained by any person as a result of an offense directly or indirectly related to the employment or prospective employment of such person by the named insured." Although Hartford has thus directly assumed the burden of proving that the state court claims fall within the asserted exclusion (see *Royal Globe Ins. Co.* v. *Whitaker, supra*, 181 Cal.App.3d at p. 537), Hartford has plainly sustained that burden.

The "offenses" alleged in the state court complaints, occurring as part and parcel of allegedly wrongful termination of the plaintiffs' employment, plainly were directly related to LMU's employment of Callahan and Wood, and hence were clearly within the language of exclusion (q). Indeed, a federal court of appeals has already construed this exclusion in a Hartford policy as encompassing employer conduct, incident to an allegedly wrongful discharge, which caused the employee "to be severely emotionally upset, physically shaken and humiliated, and damaged in his reputation." (*Interco Inc.* v. *Mission Ins. Co.* (8th Cir. 1987) 808 F.2d 682, 683.) As there stated: "Exclusions from insurance coverage are to be strictly construed. [Citation.] Moreover, any ambiguities in insurance contracts are to be resolved against the insurer. *Id.* The language of exclusion (q) is clear, however. It excludes coverage for personal injuries resulting from offenses relating to employment. The term 'employment' includes not only the initial hiring process, but the continuance of the employment relationship as well. [Citations.] [The former employee's] complaint alleges injuries caused by a breach of an employment contract. These allegations are not susceptible to an interpretation of being within the coverage of the policy." (*Id.* at p. 685.)

Virtually conceding the cogency of the foregoing, LMU heroically urges that a duty to defend the Callahan and Wood actions yet exists, because they also embrace or at least potentially embrace charges of postemployment defamation, through "compelled republication" of defamatory charges made in the course of the terminations. (See generally *McKinney* v. *County of Santa Clara* (1980) 110 Cal.App.3d 787, 795-798 [168 Cal.Rptr. 89].) The asserted distinction is unavailing. Even though postemployment defamations would involve injuries occurring after the employment (cf. *Schneider* v. *United Airlines, Inc.* (1989) 208 Cal.App.3d 71, 77 [256 Cal.Rptr. 71]), the offenses would still fall clearly within the policy exclusion, as either "directly or indirectly related to the employment . . . ." LMU's contention, that this language can (or must) be read as limited to injuries sustained when the employee is still employed, is semantically unreasonable and unacceptable. "[D]irectly or indirectly related to the employment" does not mean, and cannot reasonably be construed to mean, "committed during the employment." The policy language clearly is broader than LMU contends, and it covers all "personal injuries" alleged or potentially at issue in the state court actions, because all of them arise from or derive from, and hence are "related to," Callahan and Wood's employment and termination.

Accordingly, LMU cannot here claim the benefit of the rules that exclusionary provisions be interpreted and their ambiguities resolved against the insurer, for Hartford's exclusion (q) is clear as applied to this case. (Cf.

*Blumberg* v. *Guarantee Ins. Co.* (1987) 192 Cal.App.3d 1286, 1295 [238 Cal.Rptr. 36]; see *Producers Dairy Delivery Co.* v. *Sentry Ins. Co., supra,* 41 Cal.3d 903, 912.) The "Personal Injury" coverage is unavailable as to the Callahan and Wood state court actions.

## 2. *Bodily Injury Coverage.*

■ LMU looks to a different coverage for entitlement to defense of Callahan's federal title VII action: the policy coverage of "damages because of bodily injury . . . caused by an occurrence . . . ." For purposes of this coverage, "bodily injury" is defined in relevant part as "bodily injury, sickness or disease," and " 'occurrence' means an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the insured." LMU contends that the allegations of "mental anguish and trauma" in Callahan's federal complaint amount to a claim of "bodily injury," and that LMU's allegedly discriminatory conduct in violation of federal law qualifies, at least potentially, as an "occurrence," as defined above. The first contention need not be resolved, because the second dispositively lacks merit.

A series of recent cases, each construing a policy definition of "occurrence" identical to that here, have held that the allegedly wrongful discharge of an employee is not such an occurrence, as a matter of law, because the definitional limitation of occurrences to "accident[s]" necessarily excludes intentional acts of the insured. (*Dyer* v. *Northbrook Property & Casualty Ins. Co.* (1989) 210 Cal.App.3d 1540, 1546-1549 [259 Cal.Rptr. 298]; *Commercial Union Ins. Co.* v. *Superior Court* (1987) 196 Cal.App.3d 1205, 1207-1209 [242 Cal.Rptr. 454]; *American Guar. & Liability* v. *Vista Medical Supply* (N.D.Cal. 1988) 699 F.Supp. 787, 790-792.) LMU implicitly acknowledges the prevalence of these cases when it refrains from contending that the Callahan and Wood state court actions involve occurrences within the bodily injury coverage. However, LMU urges a difference as to Callahan's federal action. LMU argues that the facts pled in the title VII action could give rise to a finding of what is known as "disparate impact" discrimination, which neither requires nor implies an intent to discriminate. Accordingly, reasons LMU, the federal action poses a claim or potential claim of unintentional discrimination or injury, within the policy limitation to "accident[al]" occurrences.

LMU has its federal law right but its state law wrong. It is true that, "Under . . . the 'disparate impact' theory . . . , a facially neutral employment practice may be deemed violative of Title VII without evidence of the

employer's subjective intent to discriminate that is required in a 'disparate treatment' case." (*Wards Cove Packing Co.* v. *Atonio* (1989) 490 U.S. 642, 645-646 [104 L.Ed.2d 733, 744, 109 S.Ct. 2115]; accord *id.* at p. 670 [104 L.Ed.2d at p.760] [dis. opn.] [". . . intent plays no role in the disparate impact inquiry"].) But whether Callahan's alleged injuries derived from an LMU policy or decision that was intentionally or only incidentally discriminatory is not the focus under Hartford's policy. Under either theory, Callahan seeks relief on account of the application to him of a policy denying employment to married Catholic priests. Even assuming this policy could be cast as "facially neutral" in the manner theorized, LMU without question intentionally cast the policy, and intentionally applied it to Callahan, in the form of revoking his employment. The conduct for which liability is asserted in Callahan's federal action clearly was intentional.

In short, just as an intentional discharge does not become an accidental occurrence even if it causes unintended damages (*Commercial Union Ins. Co.* v. *Superior Court, supra,* 196 Cal.App.3d at pp. 1208-1209), so here an intentional discharge or application of an employment policy does not become an accidental occurrence even if it has only an unintended federally prohibited discriminatory effect. (Accord *American Guar. & Liability* v. *Vista Medical Supply, supra,* 699 F.Supp. at pp. 791-792 [denying coverage or defense for a Title VII "disparate impact" claim].) Hartford's bodily injury coverage is inapplicable to the Callahan federal court action.

### 3. *Contractual Liability Coverage.*

■ LMU's final claim of entitlement to defense again relates to the two state court actions. Among the coverages listed as included in the coverage part of Hartford's policy is "Blanket Contractual Liability," with limits of liability "subject to" those provided for LMU's bodily injury and property damage coverage. The rest of the coverage part does not specifically describe the scope of the contractual liability coverage, but does recite an exception, in exclusion (a).[4] From this summary treatment of the "Blanket Contractual Liability" coverage, LMU reasons that principles of favorable construction require it be held to provide omnibus coverage for breaches of contracts—and hence that Hartford is obligated to defend the state court actions, which seek damages for breach of employment contracts.

LMU's contention of broad coverage applicable to all contract liabilities founders because, as LMU expressly recognizes, contractual liability

---

[4] "This insurance does not apply: [¶] (a) to liability assumed by the insured under any contract or agreement if the liability arises (1) with respect to an occurrence which takes place before the contract or agreement is made or (2) out of the rendering of or failure to render professional services of any nature by any person or organization."

coverage, particularly in liability insurance contracts with insuring clauses like Hartford's,[5] traditionally extends only to tort liabilities, assumed by the insured under contract. As summarized in a modern California insurance treatise, "The contractual liability [coverage] endorsement provides coverage only when there is tort liability. More specifically, the endorsement covers third party tort liabilities that the insured assumes by contract. It does not cover damages suffered by a third party as the result of the insured's breach of a contract entered into with that party."[6] These principles have been restated and applied consistently in California cases beginning with this court's decision in *International Surplus Lines Ins. Co.* v. *Devonshire Coverage Corp.* (1979) 93 Cal.App.3d 601 [155 Cal.Rptr. 870] (hereafter *Devonshire*), and continuing through *Fireman's Fund Ins. Co.* v. *City of Turlock* (1985) 170 Cal.App.3d 988 [216 Cal.Rptr. 796] and *Insurance Co. of the West* v. *Haralambos Beverage Co.* (1987) 195 Cal.App.3d 1308 [241 Cal.Rptr. 427] to *American Guar. & Liability* v. *Vista Medical Supply, supra,* 699 F.Supp. 787. All of these hold that "contractual liability" coverage does not extend to the insured's breach of contract.

LMU yet contends that the interpretation and result must be different in this case because the structure and wording (or lack thereof) of Hartford's instant policy differ from those considered by the preceding authorities. For example, in the leading *Devonshire* case, Hartford's policy contained the same "occurrence"-related promise to pay as in the present policy, followed however by an exclusion of liability assumed by the insured under a contract. This exclusion, in turn, was "negated by special endorsement which extended coverage to 'contractual liability'" assumed under listed contracts. (93 Cal.App.3d at p. 608.) The effect of the exclusion and corresponding "contractual liability" endorsement was first to exclude from coverage *tort* liabilities which the insured assumed by contract, and thereafter to reinstate such coverage as to the contracts designated. This is the traditional form and scope of a "contractual liability endorsement." (See 3 Cal. Insurance Law & Practice, *supra,* § 41.22[7][c], pp. 41-48–41-49.)

Hartford's present policy contains neither a general exclusion of contractually assumed liability nor a corresponding endorsement or other reinstate-

---

[5] The policy's coverage part commences: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of [¶] bodily injury, [¶] property damage, [¶] personal injury or [¶] advertising injury [¶] to which this insurance applies, caused by an occurrence . . . ." (Boldface omitted.)

[6] 3 California Insurance Law and Practice (May 1989 cum. supp.) section 49.40[2], page 30; accord *id.* (1989 rev.) section 41.22[7][c], page 41-49 ("[T]his coverage is limited to the insured's contractual assumption of another's *tort* liability, ordinarily by way of a 'hold harmless' agreement, and does not extend to liability arising *ex contractu*"); see also California Department of Insurance, Fire and Casualty Life and Disability Insurance Manual (1989 ed.) page 207.

ment of coverage. Instead, its only positive reference to liability assumed by contract is the limited exclusion quoted in footnote 5, *ante*. But the net result is the same as to the type of liabilities covered. The "Blanket Contractual Liability" coverage in Hartford's policy is blanket coverage, without listing of contracts and with only one limited exclusion, "(a)," of all liabilities which LMU assumes by contract.[7] However, those liabilities remain, as in *Devonshire* and its progeny, tort liabilities, not liabilities for breach of contract. (*Devonshire, supra*, 93 Cal.App.3d at pp. 609-612; accord *Insurance Co. of the West* v. *Haralambos Beverage Co., supra*, 195 Cal.App.3d at pp. 1317-1318; see *American Guar. & Liability* v. *Vista Medical Supply, supra*, 699 F.Supp. at p. 792.) Hence, the trial court again correctly held that Hartford's policy provides no duty to defend the actions against LMU.

The judgment is affirmed.

Compton, Acting P. J., and Gates, J., concurred.

---

[7] LMU misconceives the structural significance of exclusion (a). The exclusion is extant under Hartford's coverage and apparently is typical of broad contractual liability coverage provisions. (See 3 Cal. Insurance Law & Practice, *supra*, § 49.40[2], p. 49-69.)