**The PARISH OF CHRIST CHURCH, Plaintiff, Appellant,**

v.

**The CHURCH INSURANCE COMPANY, Defendant, Appellee.**

No. 98–1692.

United States Court of Appeals, First Circuit.

Heard Dec. 10, 1998.

Decided Feb. 3, 1999.

Joseph L. Bierwirth, Jr., with whom Susan Hughes Banning and Hemenway & Barnes were on brief, for appellant.

John D. Dwyer, with whom Dwyer & Dwyer was on brief, for appellee.

Before SELYA, Circuit Judge, JOHN R. GIBSON,[*] Senior Circuit Judge, and LIPEZ, Circuit Judge.

JOHN R. GIBSON, Senior Circuit Judge.

The Parish of Christ Church brought this action for a declaration that the general liability insurance policy issued to it by the Church Insurance Company provided coverage for an action claiming defamation, invasion of privacy, and discrimination in employment brought by a former music director of the Parish. The Parish appeals from a summary judgment entered by the district court based on a policy exclusion of "personal injury sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the named insured." The Parish argues that the district court erred in its interpretation of the exclusion in the policy and abused its discretion by denying a motion to amend, alter, or reconsider the judgment. We affirm.

Renea Waligora was the music director at the parish. After Reverend James A. Diamond, the parish's pastor, dismissed Waligora from her job, Waligora filed a multi-count lawsuit in Massachusetts state court, naming the parish, Diamond, and the Protestant Diocese of Massachusetts as defendants. Waligora alleged that Diamond discharged her because she suffered from Post–Traumatic Stress Disorder and Multiple Personality Disorder. Among other things, the complaint contained counts of defamation, invasion of privacy, and discrimination in em-

ployment. The relevant allegations of the complaint are as follows:

8. Among Waligora's responsibilities as Music Director were ... to lead the adult and children's vocal and handbell choirs.

. . . . .

13. On December 26, 1993.... Rev. Diamond ... fired Waligora from her position as Music Director of the Parish....

14. In a letter dated December 29, 1993, a former parishioner and member of the Parish choir sought the intervention of the then-Bishop of the Diocese ... [but the Bishop] did nothing to reverse Waligora's termination of employment.

15. [B]eginning in or about November, 1993, and thereafter, Reverend Diamond made the following statements, uttered words to similar effect, and/or published to members of the parish, the following, *inter alia*, concerning Waligora:

(a) That 'Renea is very sick and disturbed and needs to be under intense medical treatment;'

(b) That he (Rev.Diamond) had consulted with a psychiatrist whose advice indicated that the children should be protected from Waligora;

(c) That after consulting a psychiatrist he (Rev.Diamond) felt he could no longer trust Waligora and was afraid to leave Waligora alone with the children;

(d) That if others learned more about Multiple Personality Disorder they would understand why he (Rev.Diamond) had to fire Waligora.

App. at 15–16. The parish removed Waligora's suit to federal court, and· after counts based on the Americans with Disabilities Act were dismissed, the case was remanded to the state court and is now pending.

The parish carried a general liability insurance policy issued by the company providing coverage from April 1, 1993 to April 1, 1994. The policy indemnifies the parish for damages resulting from personal injury, including injury from defamation. The policy further obligates the company to defend the parish in any suit seeking damages covered

* Of the Eighth Circuit, sitting by designation.

by the policy. However, the policy excludes from coverage "personal injury sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the Named Insured." Based on the policy exclusion, the company denied any duty to defend the suit or indemnify the parish for the costs of defending the suit. The parish filed this action seeking a declaration of its rights under the policy. The parties filed cross-motions for summary judgment. Both parties stipulated that on the motions for summary judgment the district court need only look to the policy and Waligora's complaint to decide whether the exclusion applied. The district court granted summary judgment in favor of the company, holding that the exclusion applied, and we affirm.

■■■ The key issue before us is whether the district court erred in holding that the exclusion applied. We review this conclusion of law de novo. *See Mt. Airy Ins. Co. v. Greenbaum*, 127 F.3d 15, 19 (1st Cir.1997). The question is whether Waligora's suit was for personal injury sustained "as a result of an offense directly or indirectly related to her employment" by the parish. If it is, then the policy exclusion applies, and the company has no duty to defend the parish against Waligora's suit. Looking only to Waligora's complaint and the relevant language of the policy, as the parties so agreed, we conclude the exclusion applies.

This case is similar to three others cited by the company. *See Interco Inc. v. Mission Ins. Co.*, 808 F.2d 682 (8th Cir.1987); *Frank and Freedus v. Allstate Ins. Co.*, 45 Cal. App.4th 461, 52 Cal.Rptr.2d 678 (1996); *Loyola Marymount Univ. v. Hartford Accident & Indemn. Co.*, 219 Cal.App.3d 1217, 271 Cal.Rptr. 528 (1990). In each of these cases, discharged employees brought similar claims against their employer, insured by policies with similar exclusions. *See Interco*, 808 F.2d at 683–84; *Frank and Freedus*, 45 Cal. App.4th at 464, 470, 52 Cal.Rptr.2d at 680, 683; *Loyola Marymount*, 219 Cal.App.3d at 1220–22, 271 Cal.Rptr. at 529–30. Each court held that the offenses alleged in the complaint were "related to" employment. *See Interco*, 808 F.2d at 685; *Frank and*

*Freedus*, 45 Cal.App.4th at 471–72, 52 Cal. Rptr.2d at 684; *Loyola Marymount*, 219 Cal. App.3d at 1223, 271 Cal.Rptr. at 531.

■■■ As those courts observed, defamatory statements providing an explanation for termination or directed to performance are "related to" employment. *See Frank and Freedus*, 45 Cal.App.4th at 471–72, 52 Cal. Rptr.2d at 684. Alleged offenses occurring as "part and parcel" of an allegedly wrongful termination are "plainly related" to employment. *Loyola Marymount*, 219 Cal.App.3d at 1223, 271 Cal.Rptr. at 531. Post-employment defamations can be directly or indirectly related to employment, and thus can fall within an exclusion of the sort at issue here. *See id.*

The statements to which Waligora's complaint refers are comments as to Waligora's abilities and job performance. They are explanations as to why Diamond terminated Waligora's employment. The complaint alleges that Waligora's duties included leading the children's choir. Allegations 15(b) and 15(c) specifically indicate that it was not safe for Waligora to be around the children. Allegation 15(d) explicitly mentions that Diamond was explaining his basis for firing Waligora. Allegation 15(a) does not explicitly mention the children or the firing of Waligora, but placing it in context with the other provisions in the complaint cited above, it too relates to Waligora's ability to perform her job and provides an explanation for the termination of her employment. Because the allegations in the complaint contain statements directed to Waligora's abilities and job performance and are explanations as to why her employment was terminated, we conclude the offenses are, at the least, indirectly related to Waligora's employment, if not directly related. In either case, the exclusion applies, and the company has no duty to defend.

The parish next contends that the district court abused its discretion by denying its motion to alter, amend, or reconsider the judgment. This contention is wholly without merit. First, the motion asks the court to consider documents other than those agreed to by the parties in their stipulation. Moreover, the motion refers to only one statement of a truly different substantive nature, which

Diamond allegedly made after the policy had expired. Thus, the statement is immaterial to this litigation.

**Affirmed.**