United States Court of Appeals
For the First Circuit


No. 98-1692

THE PARISH OF CHRIST CHURCH,

Plaintiff, Appellant,

v.

THE CHURCH INSURANCE COMPANY,

Defendant, Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]



Before

Selya, Circuit Judge,

John R. Gibson, Senior Circuit Judge,

and Lipez, Circuit Judge.



Joseph L. Bierwirth, Jr., with whom Susan Hughes Banning and
Hemenway & Barnes were on brief, for appellant.
John D. Dwyer, with whom Dwyer & Dwyer was on brief, for
appellee.



February 3,1999
JOHN R. GIBSON, Senior Circuit Judge. The Parish of
Christ Church brought this action for a declaration that the
general liability insurance policy issued to it by the Church
Insurance Company provided coverage for an action claiming
defamation, invasion of privacy, and discrimination in employment
brought by a former music director of the Parish. The Parish
appeals from a summary judgment entered by the district court based
on a policy exclusion of "personal injury sustained by any person
as a result of an offense directly or indirectly related to the
employment of such person by the named insured." The Parish argues
that the district court erred in its interpretation of the
exclusion in the policy and abused its discretion by denying a
motion to amend, alter, or reconsider the judgment. We affirm.
Renea Waligora was the music director at the parish. 
After Reverend James A. Diamond, the parish's pastor, dismissed
Waligora from her job, Waligora filed a multi-count lawsuit in
Massachusetts state court, naming the parish, Diamond, and the
Protestant Diocese of Massachusetts as defendants. Waligora
alleged that Diamond discharged her because she suffered from Post-
Traumatic Stress Disorder and Multiple Personality Disorder. Among
other things, the complaint contained counts of defamation,
invasion of privacy, and discrimination in employment. The
relevant allegations of the complaint are as follows: 
8. Among Waligora's responsibilities as Music
Director were . . . to lead the adult and
children's vocal and handbell choirs.

. . . .

13. On December 26, 1993 . . . . Rev. Diamond
. . . fired Waligora from her position as
Music Director of the Parish . . . . 

14. In a letter dated December 29, 1993, a
former parishioner and member of the Parish
choir sought the intervention of the then-
Bishop of the Diocese . . . [but the Bishop]
did nothing to reverse Waligora's termination
of employment.

15. [B]eginning in or about November, 1993,
and thereafter, Reverend Diamond made the
following statements, uttered words to similar
effect, and/or published to members of the
parish, the following, inter alia, concerning
Waligora: 

(a) That 'Renea is very sick and disturbed and
needs to be under intense medical treatment;'

(b) That he (Rev. Diamond) had consulted with
a psychiatrist whose advice indicated that the
children should be protected from Waligora;

(c) That after consulting a psychiatrist he
(Rev. Diamond) felt he could no longer trust
Waligora and was afraid to leave Waligora
alone with the children;

(d) That if others learned more about Multiple
Personality Disorder they would understand why
he (Rev. Diamond) had to fire Waligora. 

App. at 15-16. The parish removed Waligora's suit to federal
court, and after counts based on the Americans with Disabilities
Act were dismissed, the case was remanded to the state court and is
now pending.
The parish carried a general liability insurance policy
issued by the company providing coverage from April 1, 1993 to
April 1, 1994. The policy indemnifies the parish for damages
resulting from personal injury, including injury from defamation. 
The policy further obligates the company to defend the parish in
any suit seeking damages covered by the policy. However, the
policy excludes from coverage "personal injury sustained by any
person as a result of an offense directly or indirectly related to
the employment of such person by the Named Insured." Based on the
policy exclusion, the company denied any duty to defend the suit or
indemnify the parish for the costs of defending the suit. The
parish filed this action seeking a declaration of its rights under
the policy. The parties filed cross-motions for summary judgment. 
Both parties stipulated that on the motions for summary judgment
the district court need only look to the policy and Waligora's
complaint to decide whether the exclusion applied. The district
court granted summary judgment in favor of the company, holding
that the exclusion applied, and we affirm.
The key issue before us is whether the district court
erred in holding that the exclusion applied. We review this
conclusion of law de novo. See Mt. Airy Ins. Co. v. Greenbaum, 127
F.3d 15, 19 (1st Cir. 1997). The question is whether Waligora's
suit was for personal injury sustained "as a result of an offense
directly or indirectly related to her employment" by the parish. 
If it is, then the policy exclusion applies, and the company has no
duty to defend the parish against Waligora's suit. Looking only to
Waligora's complaint and the relevant language of the policy, as
the parties so agreed, we conclude the exclusion applies. 
This case is similar to three others cited by the
company. See Interco Inc. v. Mission Ins. Co., 808 F.2d 682 (8th
Cir. 1987); Frank and Freedus v. Allstate Ins. Co., 45 Cal. App.
4th 461, 52 Cal.Rptr. 2d 678 (1996); Loyola Marymount Univ. v. Hartford Accident & Indemn. Co., 219 Cal. App. 3d 1217, 271 Cal.
Rptr. 528 (1990). In each of these cases, discharged employees
brought similar claims against their employer, insured by policies
with similar exclusions. See Interco, 808 F.2d at 683-84; Frank
and Freedus, 45 Cal. App. 4th at 464, 470, 52 Cal. Rptr. 2d at 680,
683; Loyola Marymount, 219 Cal. App. 3d at 1220-22, 271 Cal. Rptr.
at 529-30. Each court held that the offenses alleged in the
complaint were "related to" employment. See Interco, 808 F.2d at
685; Frank and Freedus, 45 Cal. App. 4th at 471-72, 52 Cal. Rptr.
2d at 684; Loyola Marymount, 219 Cal. App. 3d at 1223, 271 Cal.
Rptr. at 531. 
As those courts observed, defamatory statements providing
an explanation for termination or directed to performance are
"related to" employment. See Frank and Freedus, 45 Cal. App. 4th
at 471-72, 52 Cal. Rptr. 2d at 684. Alleged offenses occurring as
"part and parcel" of an allegedly wrongful termination are "plainly
related" to employment. Loyola Marymount, 219 Cal. App. 3d at
1223, 271 Cal. Rptr. at 531. Post-employment defamations can be
directly or indirectly related to employment, and thus can fall
within an exclusion of the sort at issue here. See id.
The statements to which Waligora's complaint refers are
comments as to Waligora's abilities and job performance. They are
explanations as to why Diamond terminated Waligora's employment. 
The complaint alleges that Waligora's duties included leading the
children's choir. Allegations 15(b) and 15(c) specifically
indicate that it was not safe for Waligora to be around the
children. Allegation 15(d) explicitly mentions that Diamond was
explaining his basis for firing Waligora. Allegation 15(a) does
not explicitly mention the children or the firing of Waligora, but
placing it in context with the other provisions in the complaint
cited above, it too relates to Waligora's ability to perform her
job and provides an explanation for the termination of her
employment. Because the allegations in the complaint contain
statements directed to Waligora's abilities and job performance and
are explanations as to why her employment was terminated, we
conclude the offenses are, at the least, indirectly related to
Waligora's employment, if not directly related. In either case,
the exclusion applies, and the company has no duty to defend.
The parish next contends that the district court abused
its discretion by denying its motion to alter, amend, or reconsider
the judgment. This contention is wholly without merit. First, the
motion asks the court to consider documents other than those agreed
to by the parties in their stipulation. Moreover, the motion
refers to only one statement of a truly different substantive
nature, which Diamond allegedly made after the policy had expired. 
Thus, the statement is immaterial to this litigation. 
Affirmed.