USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________No. 98-1692 THE PARISH OF CHRIST CHURCH, Plaintiff, Appellant, v. THE CHURCH INSURANCE COMPANY, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Reginald C. Lindsay, U.S. District Judge] ____________________ Before Selya, Circuit Judge,John R. Gibson, Senior Circuit Judge, and Lipez, Circuit Judge. _____________________ Joseph L. Bierwirth, Jr., with whom Susan Hughes Banning andHemenway & Barnes were on brief, for appellant. John D. Dwyer, with whom Dwyer & Dwyer was on brief, forappellee. ____________________ February 3,1999 ____________________ JOHN R. GIBSON, Senior Circuit Judge. The Parish ofChrist Church brought this action for a declaration that thegeneral liability insurance policy issued to it by the ChurchInsurance Company provided coverage for an action claimingdefamation, invasion of privacy, and discrimination in employmentbrought by a former music director of the Parish. The Parishappeals from a summary judgment entered by the district court basedon a policy exclusion of "personal injury sustained by any personas a result of an offense directly or indirectly related to theemployment of such person by the named insured." The Parish arguesthat the district court erred in its interpretation of theexclusion in the policy and abused its discretion by denying amotion to amend, alter, or reconsider the judgment. We affirm. Renea Waligora was the music director at the parish. After Reverend James A. Diamond, the parish's pastor, dismissedWaligora from her job, Waligora filed a multi-count lawsuit inMassachusetts state court, naming the parish, Diamond, and theProtestant Diocese of Massachusetts as defendants. Waligoraalleged that Diamond discharged her because she suffered from Post-Traumatic Stress Disorder and Multiple Personality Disorder. Amongother things, the complaint contained counts of defamation,invasion of privacy, and discrimination in employment. Therelevant allegations of the complaint are as follows:  8. Among Waligora's responsibilities as Music Director were . . . to lead the adult and children's vocal and handbell choirs.  . . . .  13. On December 26, 1993 . . . . Rev. Diamond . . . fired Waligora from her position as Music Director of the Parish . . . .   14. In a letter dated December 29, 1993, a former parishioner and member of the Parish choir sought the intervention of the then- Bishop of the Diocese . . . [but the Bishop] did nothing to reverse Waligora's termination of employment.  15. [B]eginning in or about November, 1993, and thereafter, Reverend Diamond made the following statements, uttered words to similar effect, and/or published to members of the parish, the following, inter alia, concerning Waligora:   (a) That 'Renea is very sick and disturbed and needs to be under intense medical treatment;'  (b) That he (Rev. Diamond) had consulted with a psychiatrist whose advice indicated that the children should be protected from Waligora;  (c) That after consulting a psychiatrist he (Rev. Diamond) felt he could no longer trust Waligora and was afraid to leave Waligora alone with the children;  (d) That if others learned more about Multiple Personality Disorder they would understand why he (Rev. Diamond) had to fire Waligora.   App. at 15-16. The parish removed Waligora's suit to federalcourt, and after counts based on the Americans with DisabilitiesAct were dismissed, the case was remanded to the state court and isnow pending. The parish carried a general liability insurance policyissued by the company providing coverage from April 1, 1993 toApril 1, 1994. The policy indemnifies the parish for damagesresulting from personal injury, including injury from defamation. The policy further obligates the company to defend the parish inany suit seeking damages covered by the policy. However, thepolicy excludes from coverage "personal injury sustained by anyperson as a result of an offense directly or indirectly related tothe employment of such person by the Named Insured." Based on thepolicy exclusion, the company denied any duty to defend the suit orindemnify the parish for the costs of defending the suit. Theparish filed this action seeking a declaration of its rights underthe policy. The parties filed cross-motions for summary judgment. Both parties stipulated that on the motions for summary judgmentthe district court need only look to the policy and Waligora'scomplaint to decide whether the exclusion applied. The districtcourt granted summary judgment in favor of the company, holdingthat the exclusion applied, and we affirm. The key issue before us is whether the district courterred in holding that the exclusion applied. We review thisconclusion of law de novo. See Mt. Airy Ins. Co. v. Greenbaum, 127F.3d 15, 19 (1st Cir. 1997). The question is whether Waligora'ssuit was for personal injury sustained "as a result of an offensedirectly or indirectly related to her employment" by the parish. If it is, then the policy exclusion applies, and the company has noduty to defend the parish against Waligora's suit. Looking only toWaligora's complaint and the relevant language of the policy, asthe parties so agreed, we conclude the exclusion applies.  This case is similar to three others cited by thecompany. See Interco Inc. v. Mission Ins. Co., 808 F.2d 682 (8thCir. 1987); Frank and Freedus v. Allstate Ins. Co., 45 Cal. App.4th 461, 52 Cal.Rptr. 2d 678 (1996); Loyola Marymount Univ. v. Hartford Accident & Indemn. Co., 219 Cal. App. 3d 1217, 271 Cal.Rptr. 528 (1990). In each of these cases, discharged employeesbrought similar claims against their employer, insured by policieswith similar exclusions. See Interco, 808 F.2d at 683-84; Frankand Freedus, 45 Cal. App. 4th at 464, 470, 52 Cal. Rptr. 2d at 680,683; Loyola Marymount, 219 Cal. App. 3d at 1220-22, 271 Cal. Rptr.at 529-30. Each court held that the offenses alleged in thecomplaint were "related to" employment. See Interco, 808 F.2d at685; Frank and Freedus, 45 Cal. App. 4th at 471-72, 52 Cal. Rptr.2d at 684; Loyola Marymount, 219 Cal. App. 3d at 1223, 271 Cal.Rptr. at 531.  As those courts observed, defamatory statements providingan explanation for termination or directed to performance are"related to" employment. See Frank and Freedus, 45 Cal. App. 4that 471-72, 52 Cal. Rptr. 2d at 684. Alleged offenses occurring as"part and parcel" of an allegedly wrongful termination are "plainlyrelated" to employment. Loyola Marymount, 219 Cal. App. 3d at1223, 271 Cal. Rptr. at 531. Post-employment defamations can bedirectly or indirectly related to employment, and thus can fallwithin an exclusion of the sort at issue here. See id. The statements to which Waligora's complaint refers arecomments as to Waligora's abilities and job performance. They areexplanations as to why Diamond terminated Waligora's employment. The complaint alleges that Waligora's duties included leading thechildren's choir. Allegations 15(b) and 15(c) specificallyindicate that it was not safe for Waligora to be around thechildren. Allegation 15(d) explicitly mentions that Diamond wasexplaining his basis for firing Waligora. Allegation 15(a) doesnot explicitly mention the children or the firing of Waligora, butplacing it in context with the other provisions in the complaintcited above, it too relates to Waligora's ability to perform herjob and provides an explanation for the termination of heremployment. Because the allegations in the complaint containstatements directed to Waligora's abilities and job performance andare explanations as to why her employment was terminated, weconclude the offenses are, at the least, indirectly related toWaligora's employment, if not directly related. In either case,the exclusion applies, and the company has no duty to defend. The parish next contends that the district court abusedits discretion by denying its motion to alter, amend, or reconsiderthe judgment. This contention is wholly without merit. First, themotion asks the court to consider documents other than those agreedto by the parties in their stipulation. Moreover, the motionrefers to only one statement of a truly different substantivenature, which Diamond allegedly made after the policy had expired. Thus, the statement is immaterial to this litigation.  Affirmed.